Crowell v. Lambert.

---

*R. F. CROWELL, Relator, vs. E. C. LAMBERT, Respondent.

### APPLICATION FOR WRIT OF MANDAMUS.

Under the Constitution, the person who may be elected on the happening of a vacancy, to fill the office of Probate Judge, holds the office for the full constitutional term of two years, and not merely for the unexpired term of his predecessor.

Points and authorities for Respondent.

The Constitution provides that the term of office of Judge of Probate shall be for two years.   *Section 7, Art. 6, Constitution* (*State*), and can only be determined within that time by act of the party himself.

*Sec. 10, Art. 6 of Constitution,* is as follows :

" In case the office of any judge shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment of the Governor until a successor is elected and qualified.   (Did the section stop here the appointee of the Governor would remain in office during the remainder of the term for which the party vacating the office had been elected, but it continues:)

[*This case was decided at the *January* Term, 1864.—REPORTER.]

Crowell v. Lambert.

" And such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened."

The phrase " *successor shall be elected*," without limitation, implies an election for the full term. *See Bouvier's Law Dictionary*, as to respective meanings of " successor," and " vacancy."

If the Constitution had intended that such an election of a successor should be for the unexpired term, it would have so stated. But it nowhere provides for filling the vacancy to any judgeship except by appointment of the Governor; consequently, when an *election* occurs it must be for the full term of two years in case of Probate Judge, and seven years in the case of Supreme and District Judges.

Such was evidently the opinion of the convention which framed the Constitution. *See Constitutional Debates* (*Dem.*), *pages* 489, 515; *also, Con. Deb.* (*Rep.*), *pages* 334–5; *also, N. Y. Con.*, (1846), *sec.* 13, *Art.* 6.

No law of the Legislature can have the effect of limiting the term of any officer, which is prescribed and fixed by the Constitution. *Art.* 6, *sec.* 12, *Constitution* (*State*) *; Constitutional Debates* (*Dem.*) *pages* 515, 516 *; also* 6 *Cowen's Rep.*, 642 ; *and* 9 *Cowen's Rep.*, 641.

No law of the Legislature, regarded as contemporaneous construction of a constitutional provision, is binding upon the courts in any event, nor is it even entitled to consideration unless the point in dispute was made and discussed upon the passage of the law. As to the above, and also as to the construction of somewhat analogous provisions in New York Constitution, *see* 2 *Wendell Rep.*, 266, *and* 11 *Wendell*, 132, 511; *also, N. Y. Con.* (1822), *sec.* 6, *Art.* 4.

D. Cooper and H. J. Horn, Counsel for Relator.

Wm. Sprigg Hall, Counsel for Respondent.

*By the Court*—EMMETT, C. J.—This is an application by the Plaintiff or Relator for a peremptory writ of mandamus, to compel the Defendant to surrender to him the office of Probate Judge of the county of Ramsey, together with the records, etc., pertaining thereto.   The Plaintiff founds his claim upon an election to the office at the annual election of A. D., 1863 ; while the Defendant insists that, as he was elected, on the happening of a vacancy, to fill the office, at the annual election of 1862, his term has not yet expired.

It will be seen, from this condition of affairs, that the important question here involved is whether the Defendant was elected for the full term of two years, or merely for the *unexpired term* of his predecessor.   This question depends entirely upon the construction which should be given to section 7 and section 10 of Article 6 of the State Constitution.   They are in the language following :

"SEC. 7.   There shall be established in each organized county of the State, a Probate Court, which shall be a court of record, and shall be held at such times and places as may be prescribed by law.   It shall be held by one judge, who shall be elected by the voters of the county, *for the term of two years.*"    *    *    *    *

"SEC. 10.   In case the office of *any* judge shall become vacant before the expiration of the *regular* term for which he was elected, the vacancy shall be filled by appointment by the Governor, until a successor is elected and qualified.   And such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened."

[I have italicised those portions of the sections upon which counsel have laid particular stress.]

Giving to the language of section 10 its ordinary meaning, we should say that it plainly declares that, when a vacancy occurs, it shall be filled by appointment, until the election of a successor in

37—vol. ix.

the manner provided, and when such successor is elected, it shall be for the constitutional term, and we look in vain for any *direct* authority in the Constitution for electing any judge for a shorter period. The Plaintiff insists, however, that, in case of a vacancy in the office of probate judge, at any rate the successor is elected to fill only the unexpired term. How this can be done in the absence of any provision on the subject, and in the face of the above provision of section 7, declaring that the probate judge " *shall be* elected  *  *  *for the term of two years*," is for the Plaintiff to show. But we are told that the Constitution must be interpreted in the light of previously existing statutes; and as these statutes did then, and still do provide that such election shall be to fill the unexpired term only, that the Constitution must have intended the same thing; or, at least, to leave the whole matter to be regulated by the Legislature. This is reversing the usual rule of interpretation, and we shall hesitate to adopt a mode so novel, unless there be something in the language made use of in the Constitution which cannot otherwise be satisfactorily explained.

It was not contended that the construction insisted on by the Plaintiff would be the proper construction, independent of the statutes referred to; and if such be the true interpretation of the section, it applies to all the judges provided for in the Constitution; for there is no fair ground for distinguishing between the judges of probate and the supreme and district judges, so far as regards this question. If the successor in the case of a probate judge is elected to fill the unexpired term only, the same result must follow as to all the other judges. And yet if this controversy was concerning the office of district or supreme judge no one would ever have thought that the statute of the late territory concerning vacancies happening in the office of probate judge, passed long prior to the adoption of the Constitution, would control or influence in the least the construction of the clause of the Constitution now under consideration. No one in such a controversy would seriously have urged the proposition that a person elected district judge, on the happening of a vacancy in that of-

Crowell v. Lambert.

fice, held only for the unexpired term of his predecessor, merely because, by the law as it existed at the time the Constitution was adopted, a person elected to fill a vacancy in the office of judge of probate, register of deeds, or sheriff, etc., held only for the unexpired term. Yet such would be the construction, and such the sole reason for it, if the view contended for by the Plaintiff be correct. We do not think that aid in arriving at the proper meaning of this section can be derived from such sources. It must be construed as meaning in and of itself that the person elected to the office of judge, on the happening of a vacancy, holds for the full constitutional term, or else merely for the unexpired term of his predecessor; and we are not to suppose that it was left to the Legislature to determine how this shall be; else the meaning of the section could never be ascertained until the Legislature should act, and would be liable to change as often as that body saw proper to change the law.

But we are told that much depends on the words " regular term " in the section, and that it can be accounted for only upon the theory that it is used in contradistiction to the unexpired term referred to in the statutes. We shall endeavor, before we get thrrough, to account for the presence of the term " regular " in another manner. But, we would ask, if the word is used in the foregoing sense alone, what is to be done in the event of a vacancy occurring by the death or resignation of a judge elected to fill the unexpired term of his predecessor? We can readily conceive of such an event happening even during the first year of the regular term of a supreme or district judge, and it is a matter of no small importance to know how the remaining six years are to be filled, if the construction claimed by the plaintiff is to prevail. The Constitution in that case would not authorize an election; for the vacancy thus to be filled occurs only in the regular constitutional term, as contra-distinguished from an unexpired term; nor would the Governor be authorized to appoint under this section, for the same reason; nor has he the authority under the general power given him to fill vacancies by *Section 4 of Article 5*; because the office of Judge is not one of those therein enumerated, nor is

it a state or district office created by authority of law *since* the adoption of the Constitution. And even if the Executive could appoint under this general power, the appointment could not extend beyond the next election. What then is to be done?

We may readily see, therefore, if any such effect is to be given to the word " regular," as used in *Section* 10, that we are as yet without the means of filling a second vacancy should one occur. No such difficulty presents itself, however, if the section be construed as authorizing an election for the full term, whenever an election takes place.

Again it is urged that an insurmountable difficulty arises out of the construction claimed by the defendant, in this, that the person elected to fill a vacancy would necessarily hold the office beyond the term fixed by the Constitution; because he would be entitled to enter upon the duties of the office immediately after the election, which occurs in November; consequently the constitutional term would expire the same month ; but as his successor's term, as the law now stands, would not commence until the first of January following, there must, of necessity, be a holding over from November to January, or a vacancy during said time, which there is no certain or convenient way of filling. But it has occurred to us that the objection here raised can easily be avoided by a change of the law on which the difficulty is predicated. If the Legislature have the right to fix the time when the term of office of any judge, or other office created by the Constitution, shall commence or terminate, (which we deny, if thereby the duration of the term is to be seriously affected,) and if the provision of statute declaring that the regular term of all *county* officers and court commissioners, when elected for a full term, shall commence on the first of January next succeeding their election (*Laws of* 1861, *chapter* 15, *sec.* 45), may be regarded as an exercise of that right, so far as concerns the office of judge of probate, (which is more than doubtful,) still we do not see how any such vacancy or holding over, as suggested, could occur, if the person elected judge of probate on the happening of a vacancy, is elected for the full term, because the statute in that event would

Crowell v. Lambert.

expressly apply to him, and he could not then qualify before the time fixed; and up to such time as he could thus qualify, the appointee of the Governor would hold the office by express provision of the Constitution. It is exceedingly doubtful, however, whether the statute above referred to was intended to apply to the office of probate judge, or to any offices except those which the Legislature may create or abolish at pleasure.

But admitting that a person elected judge of probate on the happening of a vacancy in that office, may enter upon its duties immediately after his election; that being elected for two years, his full term would expire before the first of January, and that if he held over until that time, his term would be prolonged to that extent; still there is no violation of any vital principle in permitting him so to do, if the prolongation is not so great as to be a fraud upon the constitutional limitation of the term. The Constitution, by providing that the person elected to almost every other office created by that instrument, shall hold it for a term certain, *and until his successor is elected and qualified*, admits the possibility of his holding beyond the term prescribed. But as we have already said, the difficulty, if any here exists, can easily be remedied by the Legislature.

We are not, however, without authority on these questions. All these objections appear to have been urged in the case of *The People vs. Green*, 2 *Wend*, 266, which was almost identical with the case at bar, both as to the facts and the principles involved. By the Constitution of the State of New York it was provided that sheriffs  *  *  *  should be elected " *once in every three years, and as often as vacancies should happen ;*" but nothing further was said either in regard to the *term* of such office, or as to time when it should commence or terminate.

A vacancy having occurred in the office of sheriff of Cayuga county, Green, the Defendant in that action, was elected sheriff; and, at the general election immediately preceding the time when the regular term would have expired, one Gallup, the Relator, was elected to the same office; but when the newly elected officer asked admission into the office, Green, the incumbent, refused on

the ground that he was not elected merely to fill the unexpired term of his predecessor, but for a full constitutional term of three years, and that his term, therefore, had not then expired. In that State, as in this, there was, or had been, a statute declaring that a person elected to fill a vacancy in the office of sheriff, register, &c., should hold only during the unexpired term, and also a law similar to ours, fixing the first of January next succeeding an election, as the time when the term of office should commence. Gallup then instituted proceedings in the nature of a *quo warranto*, in the name of the People, to oust Green. It will thus be seen that every question involved in the present case was also involved in that, and an examination of the points there made and urged, will show that they could not have been more nearly identical in substance with the points urged in this proceeding, had the one been copied word for word from the other. There, as in this case, they attempted to draw a distinction between the regular and the unexpired term, insisting that this was the only way to preserve the harmony of the governmental system established by the Constitution, which made it essential that all general elections should be held on the same day, and that the political and all official years should commence at the same time; and the same argument *ab inconvenienti*, was urged, to wit, that the Defendant or Respondent in that case, having the right to enter upon the duties of the office immediately after his election in the month of September, his term of office, if he held for the full term, would expire also in said month, and unless a special election should be ordered at great inconvenience, he would necessarily hold the office thence to the first of January following, when alone his successor could enter upon the office. And that this course would be equivalent to extending the constitutional term.

The proceedings were conducted for the Relator, with characteristic ability, by Honorable Benjamin F. Butler and the late Judge Bronson, and the several questions raised were determined by that eminent jurist, the late Judge Marcy, in an exhaustive opinion, wherein he decided that the vacancy was in the office, and not merely in the erm of ser-

vice of the person selected to fill it. That although there was no express designation in the constitution of the State of New York of the term for which a sheriff was to hold, yet it was fixed at three years by the strongest implication. That an election on the happening of a vacancy was for the full term, and not for the unexpired term of the predecessor. That the framers of the Constitution must have foreseen that such contingency would frequently arise, and therefore it was "reasonable to infer that if they intended that persons elected to fill vacancies in the office of sheriff, happening before the expiration of the term of the present incumbent, should hold for a shorter period than the general term, *they would not have left that intention to be evolved by ingenious distinctions and dubious inferences.*" And after stating that elections for sheriff are not by the Constitution to be held oftener than once in three years, except in cases of vacancy, he pertinently asks, " In what part is it declared, or from which of its provisions are we authorized to infer an exception in case of a person elected to an office vacant by the death, resignation, or removal of his predecessor ?" And " why should he not hold as long as he would have done if elected at the end of a full term ?" We may also repeat the same questions in regard to our own Constitution.

The principles decided in *The People vs. Green,* were afterwards affirmed by Savage, Chief Justice, in the case of *The People vs. Contant,* 11 *Wend.,* 132, and by the Chancellor, when the latter case wen to the Court of Appeals, 11 *Wend.,* 511. And in the several opinions given, the matter of legislative construction of the Constitution, though treated as entitled to respectful consideration, when shown to have been made with due deliberation, was, nevertheless, regarded as of no importance where the meaning of the Constitution was so plain.

We might here leave this matter, satisfied that the construction we have given to this clause of our Constitution, is amply sustained by both reason and authority; but there is still another source from which its scope and meaning may be gathered. In both the New York cases above alluded to, the courts looked

freely into the debates of the convention which framed ther Constitution, in order to gather therefrom the intention of that body, in adopting the clause they were endeavoring to construe; and this Court, in the case of *Minn & Pacific R. R. Co. vs. Sibley*, 2 *Minn.*, 13, has also acknowledged the propriety of a similar course.

We need not explain here the dual character of our Constitutional Convention; we will be sufficiently understood, when we refer to one as the convention presided over by the Hon. Mr. Sibley, and to the other, as that presided over by the Hon. Mr. Balcombe.

To premise, then, the whole of the article on the judiciary, which was adopted by the joint committee of the two conventions, and which now forms the sixth article of the Constitution, is, with the exception of the tenth section, identical with that which was passed by the convention over which Mr. Sibley presided; and we must look, therefore, to the debates in this convention, rather than the other, for light in regard to the meaning and intent of the different sections of the article. When the article was reported to this convention by the judiciary committee, and that body had the report under consideration, Mr. Chase moved to amend section three, by striking out the word "seven," and inserting the word "six," and adding the following:

"At the first election one Supreme Judge shall be elected for two years, one for four years, and one for six years."

This amendment was favored by Judge Flandrau, on the ground that, although at the first election the Judges would all be chosen at once, yet if the amendment prevailed it would never again occur,—but upon an explanation from Judge Sherburne, the chairman of the judiciary committee, the amendment was not agreed to. He remarked as follows:

"Mr. Sherburne—The gentleman says it has been usual for judges of the Supreme Court to be elected for different terms. That proposition was presented before our committee. I took occasion to look into the different constitutions, and did not find more than one or two instances where that course had been pur-

sued. But, Mr. Chairman, I do not believe in the doctrine, and I hardly see how the members of this Convention can favor a proposition of that kind. I believe that seven years is little enough time for a Judge of the Supreme Court to occupy the Bench. It is objected that the Judges should not all go out at the same time. Well sir, if that should be the result, I can hardly see what harm would follow; but it would rarely ever happen practically that the terms of two Judges will run out at the same time. Some of them resign; some die; some become too old and infirm; and the result is that they are appointed at different periods. I believe it will be found in practice, *that there is no possible necessity for any such provision to accomplish the object which the gentleman wishes to reach.*"

"Mr. Flandrau—I think it would be very well for some arrangement of this kind to be made to start with, when our machinery goes into operation. *After that, they may, as the gentleman suggests, be elected at different periods, without any special provision on the subject.*"

"Mr. Sherburne—If the gentleman will offer an amendment fixing the terms of office of the Judges to be elected at the first election, at three, six and nine years, I will consent to it, *although I consider such a provision unnecessary.* But sir, I think, under no circumstances *should we elect a Judge for two years.*" (See *Debates in Constitutional Convention,* as reported by Francis H. Smith, *pp.* 511, 512.)

This explanation seemed to satisfy the Convention that time would obviate the objection which the amendment was intended to remedy, and the matter was not again alluded to afterwards. These extracts are sufficient to show that it was the understanding of this Convention, that when a Supreme Judge should be elected on the happening of a vacancy, he would hold the full constitutional term; for in no other way could the objection against all the Judges going out at one time be obviated; and as the same language is applied by the Constitution to the District Judges and Judges of Probate, it follows that they two must always be elected for the full term. The great object of having them so

elected, as may clearly be gathered from the debates, being to prevent short terms.

The article on the Judiciary, which had been passed by the other Convention, or that over which Mr. Balcombe presided, provided for the election of one of the Supreme Judges for three years, one for six, and one for nine years at the first election, but that their successors should all be elected for nine years; thus guarding against the objection before mentioned. The twenty-fourth section of this article was as follows:

"Sec. 24. In case the office of any Judge shall become vacant before the *regular* term for which he was elected, the vacancy shall be filled by appointment of the Governor until a successor is elected and qualified, and such successor shall be elected *for the unexpired term*, at the first annual election that occurs more than thirty days after the vacancy shall have happened."

The joint committee of conference appointed by the two different Conventions, had before them the Constitutions which each had passed; and when they united on a common Constitution to be submitted to the bodies by which they were accredited, they adopted, as we have before remarked, the Judiciary article passed by the Convention presided over by Mr. Sibley, with the exception of its tenth section and one other unimportant feature. And as the other Convention had without a dissenting voice, guarded expressly against the terms of the Judges of the Supreme Court all ending at the same time, it is but reasonable to presume that the members of the Committee from that body were satisfied from the explanations of the members from the other Convention, among whom was Judge Sherburne, their chairman, that the article which they adopted answered the same purpose practically. When, however, the Committee came to examine the 10th section of that article as it was passed by the Convention which submitted it to their consideration, it was rejected, for the reason, doubtless, that it did not fix any time when an election should take place on the happening of a vacancy; and section 24 above recited of the other Constitution, was substituted, striking out, however, the words, "*for the unexpired term*," but, by oversight perhaps, suf-

fering the relative word "regular" to remain.    The article as thus adopted by this committee was reported to the separate Conventions, and adopted by them respectively.    We think there is special significance in the fact that these words were thus stricken out or omitted by the Committee, since it may be regarded as the joint act of the two Conventions, and as a deliberate rejection of a proposition to elect for the unexpired term only, when a vacancy should happen in the office of any Judge; the very proposition in fact upon which the plaintiff or applicant here predicates his application for a peremptory writ of mandamus.

The application must be denied.