STAPLES, J.
This is an application for writs of habeas corpus in two cases. The petitioners are, however, merely nominal parties. The real controversy, which is of an amicable nature, is between Honorable John C. Weed-on on the one hand, and Honorable C. G. How-ison on the other, each claiming to be the judge of the county court of Prince William.
The former was elected in the month of March, 1878, to fill a vacancy occasioned by the death of Judge Nicol. The latter was elected at the last session of the legislature. The sole question to be decided is whether Judge Weedon was elected and is entitled to hold for the full constitutional period of six years, or for the remainder of Judge Nicol’s unexpired term. This question involves the official tenure of one of the, judges of this court, two or more judges of the circuit court, and several judges of the county court, and is otherwise of considerable importance and interest in the administration of justice.
By reference to 13th section of article 9 of the Constitution we find the following provision upon the subject of the county judges:
“County judges shall be chosen in the same manner as the judges of the circuit courts. They shall hold their offices for a term of six years, except the first term under this Constitution, which shall be three years.” The provision relating to the *398 circuit judges is as follows: “For each circuit a judge shall be chosen by the *joint vote of the two houses of the general assembly, who shall hold his office for a term of eight years. It is also provided that the judges of the court of appeals shall hold for a term of twelve years, and the judges of the corporation courts for a term of six years.” These are all the provisions of the Constitution having any bearing upon the question that need now be mentioned. It will be observed there is no reference whatever to unexpired terms, of judicial officers. No distinction is made between the term of a county judge elected at the expiration of the constitutional period of six years and the term of a judge elected to fill a vacancy occasioned by death, resignation, or removal.
Whenever elected, or for whatever purpose elected, the incumbents shall hold for six years. The language is general and positive. It embraces all the judges. It refers to the offices of all. If, therefore, in any case we hold the duration of a term to be less than six years, it must be done by supplying words 'not found in the Constitution. The second section of the fifth article provides that the governor, during the recess of the general 'assembly, mayr fill pro tempore all vacancies in those offices for which the Constitution and laws make no provision, but his appointments shall expire at the end of thirty days after the commencement of the next session of the legislature. Now, as the duration of the governor’s appointment is expressly limited, if it was intended that the legislative appointment, upon the happening of a vacancy, should be also limited, the fair inference is it would have been so expressly declared. The term of an office is the estate or interest the incumbent has in it. When he abandons or forfeits that interest by resignation or removal the office reverts to the people or other appointing power.
Vacancy ex vi termini means vacancy, in the office and not in the term. When we speak of vacancy in an *office we mean there is no incumbent — no one entitled to exercise its powers and receive its compensation. 2d Abbott, Law Dictionary 624; People v. Waite, 9 Wend. 58. When an election is made to fill a vacancy, the election carries with it all the rights, immunities, and privileges attached to the office, one of which is the right to hold for the full period prescribed, and not to merely serve out a vacant term of office of a predecessor.
Under the Constitution of 1829, the election of judges was for the life of the incumbent. .Upon his resignation, or removal, his successor was also elected for life. Could it be said, with any sort of propriety, that in such case the election was merely for the unexpired te'rm; that the incumbent would hold only for the life of his predecessor? This would be' the inevitable result if the proposition sometimes advanced be correct, that the vacancy is in the term and not in the office, and the incumbent is entitled merely to the residue of the unexpired term.
By the express words of the present Constitution the only mode of filling the office permanently, however the vacancy may occur, is by election, and when that is made it is declared “they (the county judges) shall hold their offices for the term of six years.”
_ Similar words are found in the constitutions of nearly all the States, and it so happens they have been judicially construed in numerous cases involving the identical question now before us. A reference to some of these cases will materially aid our inquiries here.
In Banton v. Willson. 4 Texas 400, Hemp-hill, J., in commenting upon like provisions in the Texas constitution, said, when the term of an office is fixed by the Constitution at say four years, each succeeding incumbent, although elected to fill a vacancy, is entitled, unless it be otherwise provided in the Constitution, to *hold the office for the full period. See Bradley v. McCrabb,
Dallam Digest 504-511. In Brewer v. Davis, 9 Humph. 208-213, the court says: “The amended Constitution/in plain terms provides that clerks of inferior courts shall be elected for four years. There is no authority to be found -in the Constitution for an election for a shorter period. And although the election may be fixed, as in this case, at a time different from that appointed by law for the election of county officers in other courts of the State, or to fill a vacancy occasioned by the death, resignation, or removal of the prior incumbent, still, in either case, the person elected will be entitled to hold his office for the full constitutional term. It is not competent for the legislature to shorten the term, and any enactment to that effect is void. The argument that this rule will lead to confusion and want of uniformity in the time of holding elections is of little force; for, as is said in the case of Powers v. Hurst, 2 Humphrys 24, such uniformity is of no practical utility; and were it otherwise, is not attainable. In Hughes v. Buckingham, 5 Smedes & Marshall 632, 648, Chief Justice Sharkey discussed this question with his usual ability and learning. In the course of his opinion he said the law declares how long the clerk shall hold when appointed, but it does not declare when the appointment shall be made. On general principles, then, each appointment must hold for the length of time prescribed by the statute. If the incumbent so appointed should choose to abandon or forfeit his interest the term of his successor commences as soon as he may be designated by the chancellor and the law, or the grant, gives him the full term, not the remnant which has been abandoned by his predecessor. This question is not a new one in this State. It arose as early as 1834, and frequently since. The distinguished chancellors who have had it before them seem to have bestowed on it *due consideration, and have decided it with entire unanimity. In the case of The People v. Green, 2 Wendell, 272. Marcy. J., delivering th.e unanimous opinion of the Supreme court of New York, said: “By the general *399 provisions elections for the sheriff are not to be held oftener than once in three years, except in cases of vacancy. In what part of the Constitution is it declared, or from which of its provisions are we authorized to infer an exception in case of a person elected to an office vacant by the death, resignation, or removal of his predecessor? Why should he not hold as long as he should have done if elected to the end of a full term? Green was elected, as I understand the provision, to fill the vacant office, and not merely to serve out the vacant term of his predecessor. When Green came into the office he took it with all the rights, powers, and incidents belonging to it under any circumstances, one of which was a tenure of three years.” See also The People v. Constant, 11 Wend. 132.
These citations may be multiplied almost indefinitely, for this identical question has been repeatedly decided in other States— besides those mentioned — and those decisions have been almost uniformly the same way. I shall content myself with simply referring to some of the cases on the subject, for which I am mainly indebted to the researches of counsel, and an article in January No. of the Taw Journal. Marshall v. Harwood, 5 Md. 423-431, and cases there cited; Sansbury v. Middleton. 11 Md. 297; The State v. Huison, 1 McCord 240; The State v. McClintock. Id. 245; Crowell v. Lambert. 9 Minn. 283; Keys v. Mason, 3 Sneed’s R. 6; People v. Burbank, 2 Cal. 378; Wammach v. Holloway, 2 Ala. 31.
The decisions in all these eases, or nearly all, were based upon Constitutions of the different States, which, Hike ours, contained no express provisions with respect to unexpired terms.
In all of them the requirement that the judge or other officer “shall hold for a term of years specified” has received the same interpretation. In every instance those words have been construed as requiring an election for the full constitutional term, whether the vacancy be created by death or resignation, or by expiration of a regular term. Each incumbent holds for the length of time prescribed by the Constitution, unless prohibited by express enactment or implication equally plain. When we see certain provisions incorporated into our Constitution also found in the Constitutions of other States, and these provisions have received uniformly the same construction in numerous cases, we must suppose it was intended they should be construed in like manner here. At all events it would be a little surprising if this court should now give to these provisions j a construction entirely different from that ! given in every other State by judges of the highest respectibility and learning. So far from there being in other parts of our Constitution anything militating against this interpretation, there is abundant matter to confirm and sustain if.
The second section of the sixth article of the Constitution, after providing for the election of clerks, sheriffs. Commonwealth attorneys, and other county officers, further provides that all regular elections for county officers shall be held on the first Tuesday after the first Monday in November, and all said officers shall enter upon the duties of their offices on the first day of January next succeeding the election, and shall hold their respective offices for the term of three years, except that the county and circuit court clerks shall hold them for four years. With1 respect to the township officers, like provision is made for filling them at *regular elections, to be held at stated periods through the State. These references are sufficient to show that in filling the offices elected by the people the primary object is uniformity, to avoid as far as possible the necessity of special elections, and to establish a system of general elections throughout the State.
And although it is not expressly so provided, it follows by necessary implication that whenever a vacancy occurs the election is for the unexpired term only. For if the incumbent is permitted to hold for the full constitutional term, in the course of time the deaths, resignations, and removals occurring in the different counties would have' the effect practically to abrogate the system of regular elections. When, therefore,, the Constitution provides that certain officers shall be elected at a regular election,, and that this election shall take place on a certain day, named at regular stated periods, it follows by inevitable implication that the terms of all such offices are to be controlled by the regular election held throughout the State.
By this system the confusion and expense incident to frequent special elections are avoided, and the importation of fraudulent votes from other counties in some measure prevented.
We look in vain for the slightest indication of any such policy in the election of judges. No day is appointed for the purpose. Nothing is said even as to the years in which they are to be elected. If the legislature should fail to make an election at the expiration of the regular term the incumbent would hold over until his successor is chosen and qualified. This distinction between the offices of judges elected by the legislature and offices elected by the people is not accidental. It is recognized in the Constitutions of other ^States, and has been the subject of judicial discussion elsewhere.
In the cases of Hughes v. Buckingham. 5 Smedes & Marshall 648. and Smith v. Half-acre, 6 How. Miss. R. 582-602, this very distinction was much considered by the Supreme court of Mississippi. In the latter case Chief Justice Sharkey, in the course of his opinion, said: “Counsel rely entirely on the force of the provision contained in the Jlth section of the 4th article, which declares that the circuit judges shall be elected by the qualified electors of each judicial district, and hold their offices for the term of four years.”
This section considered alone might justify this construction, but the whole instrument *400 is to be taken together with reference to all its parts. Other parts of the instrument provide that a general election shall be held biennially in November for the purpose of electing officers under the Constitution. The „ term of four years is to be taken in connection with this other provision.
The conclusion irresistably forces itself on us that the Constitution intended that all terms of office should begin and terminate with the regular election. The same view is- strikingly presented in the cases decided by the Supreme court of Maine, but it is unnecessary to do more than refer to them here — 61 Maine 601; 64 Maine 596.
Whether, therefore, we look at the clause of the Constitution relating to the election of judges by itself, or, what is more correct, in connection with other parts of the instrument, we are led to the same conclusion. There is but a single circumstance which' at all militates against the view now taken. The Constitution of 1851 contained a provision that special elections to fill vacancies in the office of judge of any court shall be for the full term. See Article 4, section 38, Constitution *of 1851. That provision is not found in the present Constitution, and it has been argued that the omission is evidence of an intention to change the law on the subject.
To this it has been very properly answered that the motives that influenced the framers of the Constitution in leaving out the provision are at best a mere matter of conjecture and inference. They may have thought it superfluous, and therefore unnecessary. They may have supposed such a provision with reference to the term of the judges might be construed as establishing a different rule with respect to the terms of all other offices, and therefore calculated to mislead.
In the Constitution of 1851 such a provision found its appropriate and necessary place. Inasmuch as all the judges under that instrument were elected by the people, it might be inferred that all of them were to be elected at some regular or general election, and it wasl no doubt apprehended the legislature might so construe it.' It was to guard against these contingencies, to place the terms of office beyond all interference, that the framers of the Constitution, out of abundant caution, adopted the provision in question. In the present Constitution it has been seen that such a provision was wholly unnecessary, because the judges, are now elected by the legislature, and their terms 'of office fixed in words of plain and unambiguous import.
If we are to believe the attention of the men who framed the present Constitution was called especially to this subject, if their purpose was that in cases of vacancy the incumbent shall hold only for the unexpired term, would they not have said so in plain and unmistakable language?. Would they have left a matter of so much importance in doubt and uncertainty? A single line, the change of a word in the phraseology of the Constitution of 1851, would have ^'accomplished the purpose. In the language of Judge Marcy, in The People v. Green, already cited, “the framers of the Constitution must have foreseen that such cases would happen very frequently, and it is therefore reasonable to infer that if they intended that persons elected to fill vacancies in the office of sheriff should hold for a shorter period than the general term, they would not have left that intention to be evolved by ingenious distinctions and dubious inferences.”
We come next to consider the joint resolution passed by the legislature the 18th of December, 1872, which declares that all elections by the general assembly to fill all vacancies shall be only for the unexpired term of the predecessor. This resolution was adopted nearly four years after the Constitution was framed, by a legislature composed of entirely different men from those who sat" in the Convention. It is therefore not entitled to any weight as a contemporaneous exposition of the Constitution.
It seems, however, to show 'that, in the opinion of that legislature at least, elections by the general assembly to fill vacancies would be for the full term of office in the absence of legislation on the subject, and therefore it was a different rule that was sought to be established by statute.
The only provision in the Constitution which by possibility can be construed as authorizing the general assembly to exercise a power of that sort is found in the twenty-second section, article fifth, of that instrument. It declares that the manner of filling vacancies in office in cases not specially provided for by the Constitution shall be prescribed by law. Clearly, however, the manner of filling a vacancy has no sort of connection with the term of the incumbent after the vacancy.is filled. The Constitution fixes the term of office, but leaves to the legislature the power of declaring the *manner in which vacancies shall be filled; and this power has been repeatedly exercised with respect to all officers elected by the people. Sec. 21. chap. 6, Code 1873.
It is universally conceded to be a most delicate exercise of authority to pronounce an act of the legislature unconstitutional. It is one which a judge, conscious of his fallibility, will shrink from exercising in any case where he can conscientiously avoid the responsibility; But when the conflict between the Constitution and the law is plain and palpable, the court must decide between them. One of them must of necessity give way to the other. The Constitution is the supreme power in the State, and we are sworn to obey it. If that supreme power gives one rule and a subordinate authority gives a contradictory rule, the latter is inoperative and void, and the court must so decide.
If the Constitution of Virginia fixes the tenure of all her judicial officers, and upon this point there can be no doubt, it is clear that any attempt of the legislature to change that tenure is a plain usurpation of power. Upon this point, fortunately, there is abun *401 dant authority. In Washington Keys v. Mason, 3 Snead, 6. it was held that as the Constitution of Tennessee fixed the term of justices of the peace at six years, the incumbent, although elected to fill a vacancy, was entitled to hold for the full term, and the act of the legislature limiting the term to the remainder of that of his predecessor in office was unconstitutional and void.
In People v. Burbank, the Supreme court of California said: “The legislature may direct the time and prescribe the mode of election, but it cannot change the tenure. It can no more prescribe that the judge elected shall hold for a part of a constitutional period than for double the time. If a commission, issued by *the governor, cannot control the provisions of an act of the legislature, neither can an act of the legislature control a provision of the Constitution.”
“As soon as the ordinary is elected he is in office under the Constitution, and entitled to all the rights and immunities conferred by that instrument.” “If,” says Mr. Justice Huger, of the constitutional court of South Carolina, “the people declare and ordain in their constitution that an office shall be held by a particular tenure, it would be as much usurpation in the legislature to alter that tenure as it would be in the governor to commission for a longer period than directed by the legislature.”
In the case of Bradley v. McCrabb, already cited, Chief Justice Hemphill, on delivering the opinion of the court, said: “There is nothing in the terms of the Constitution which can militate against the plain and just conclusion that the person appointed by the elective power to the office of district clerk is entitled, whenever he may be elected, to hold the same for four years. It cannot, therefore, be material, in point of fact, to ascertain whether Mc-Crabb was elected for a less or even a greater period than the term of four years.
“The Constitution prescribes the tenure of his office, and under its high guarantees he could not be disturbed even by a solemn act of the legislature without subverting the fundamental principles of the social compact.” There are numerous other authorities to the same effect, but these sufficiently illustrate the principle. See the cases already cited, and Horn v. Gamble, 62 Penn St. Reports 343, and Howard v. State, 10 Ind. 99; Lowe v. Commonwealth, 3 Met. R. 337; Brown v. Booth, Grover v. Booth, 1.
If the legislature of 1873 and’73 was constitutionally competent to enact that every judge elected to fill a vacancy shall hold for the unexpired term only, another ^legislature is equally competent to repeal the enactment, and thus the tenure of office is left to be determined by the conflicting and changing opinions of different legislatures. Such plainly is not the spirit of the Constitution; such was not the intention of its framers, and such has not been the policy of the State.
If the tenure of judges in cases of death, resignation, or removal, is not fixed by the Constitution, what was the tenure before the joint resolution was adopted? What would it be had the legislature failed to take action? The Honorable Wood Bouldin was elected a judge of this court to supply a vacancy occasioned by the death of Judge Joynes. This was nearly a year before the passage of the joint resolution. What was his term of office at the time of his election? Was it uncertain? Had the Constitution made no provision for the term of its highest judicial offices in cases constantly recurring? Such an idea is at war with the whole spirit of that instrument; no one can read it without an absolute conviction that the term of every constitutional office is plainly prescribed therein.
Judge Bouldin was entitled, as soon as elected, to hold for the term of twelve years, or merely for the residue of Judge Joynes’ unexpired term. It was one or the other. Which was it? The Constitution says the judges of the court of appeals shall hold for the term of twelve years. There is no other term prescribed.
My opinion, therefore, is that when a vacancy occurs in the office of judge by reason of death, resignation, or removal, the incumbent elected to fill that vacancy holds for the full term, as declared in the Constitution. This has been the policy of the State from the beginning.
Under the Constitutions of 1839 and 1776 the judges were elected for life of the appointee, whether the ^vacancy was occasioned by the resignation, removal, or death of the previous incumbent. And when, under the Constitution of 1851, the term for years was substituted for the life tenure, the distinguished men who framed that instrument were careful to provide, out of abundant caution, that in every case the election of judges should be for the full term prescribed in the Constitution. A rule thus adopted, a policy thus adhered to, through all the changes of the government, should not be abandoned upon light and fanciful ground. We ought to be able to find in the Constitution evidence of such abandonment expressed in plain and unmistakable language. The reasons which no doubt influenced the various conventions in requiring the elections of judges to be for the full term are numerous and obvious. This is no time or the occasion for their discussion. Some of them, may be briefly mentioned. I pass by the fact that the election devolving upon different legislatures is calculated to prevent those combinations sometimes so hurtful to the public interests. I pass by the fact that when the election is for part of a term only, and sometimes for a very small part, men of large attainments and lucrative practice will be reluctant to give up their business engagements and prospects to accept an office held by a tenure so brief and precarious.
There is no doubt, however, the main purpose of the framers of the several Constitutions was to secure, the complete independence of the judiciary.
This is the cardinal principle of constitu-* *402 tional government. It is recognized and enforced in the Federal Constitution and in the Constitutions of nearly all the States. The paramount object is to make the judges secure from interruption in any quarter; to protect them against the action of other departments-of the ^government, and even against the people themselves in times of' great political and party excitement. This is not done from any special regard for the judiciary department, but because its peculiar function is to expound the Constitution and laws, to settle controversies, to punish crime, to enforce the safeguards thrown around persons and property, and, If need be, to protect private rights against the exactions of- arbitrary government.- It is, therefore, wisely provided that the compensation of the incumbents shall not be diminished during their terms of office, and those terms are fixed by the Constitution only to b'e changed by the people themselves in the exercise of the highest sovereign powers. Men do not change their natures when they become 'judges.' They are none the less prone to be swayed by the suggestions of self-interest. , the promptings of ambition, and timid apprehensions of loss of power and official position.
When the incumbent understands that his tenure oí office is brief, and that he is again to undergo the ordeal of an election, there is always more or less danger that he may unconsciously to himself conform his action to the dominant power in the State, or shape his conduct with a view to his re-election.
Considerations of this sort, as well as others which might be mentioned, led, no doubt, to the adoption of those constitutional provisions, here and elsewhere, under which the judicial tenure of office is the same, whether the vacancy be occasioned by death, removal, or resignation, or by the regular expiration of the constitutional term. But whatever may have been the motives of the framers of the Constitution, with which the courts have perhaps but little to do, the language of the instrument is plain, and in my judgment admits of but one interpretation. If there existed a reasonable doubt on the subject, that doubt would of course *be solved in favor of the action of the general assembly, to whose opinions, at all times, this court owes the highest respect and consideration. But where, as in "the present case, the provisions of the Constitution are free from all doubt or difficulty, we are not permitted out of mere deference to another department of the government, to give to these provisions an interpretation at variance with their plain import and meaning. Other views might be presented in support of the ground- already taken, but they would only swell this opinion to an unreasonable length. If those already presented fail to convince, further discussion would only be a useless consumption of time and labor. My opinion, therefore, is that the Honorable John C. Weedon was elected and is entitled to hold- his office of judge of the county court of Prince William for the full term of six years.
CHRISTIAN and ANDERSON, Js., concurred in the opinion of Staples, J.
MONCURE, R., dissented.
. Judgment in.favor' of Meredith, and against Harrison.