## CORTLAND WAGON CO. *vs.* PAUL SHARVY.

Argued by respondent, submitted on brief by appellant, Dec. 5, 1892. Decided Jan. 11, 1893.

**A Consignment of Goods to an Agent to Sell not a Conditional Sale.**

By a written contract made between plaintiff corporation and one W., it was agreed that the former should furnish to the latter, for sale upon its account, wagons and sleighs of its own manufacture, price lists being attached. No transfer of the absolute or general property to W. for a price in money, or for any other consideration, was agreed upon, nor was there a contingent agreement for such a transfer. *Held*, that the contract was one of consignment only, and not within the provisions of 1878 G. S. ch. 39, § 15, etc., which requires certain contracts to be filed in the office of a town or city clerk.

**Oral Modification of the Contract of Agency.**

Wagons and sleighs furnished by the plaintiff, but made by another concern, could be brought within all the terms and conditions of such contract by an oral agreement between plaintiff and W.

**Court may Direct Verdict on the Question of Fraudulent Intent.**

Although the question of fraudulent intent in cases arising under the provisions of our statute of frauds is made one of fact for a jury to determine, the statute which so provides (1878 G. S. ch. 41, § 20) has no applicability where there is no controversy over the facts, and where, as a consequence, the jury could find but one way.

**Evidence Justified the Direction as to Verdict.**

The evidence in this case, bearing upon the question of fraudulent intent in a sale of certain chattels made by said W. to plaintiff, considered, and *held* to have justified the court below in directing that the jury find for plaintiff as to these chattels.

Appeal by defendant, Paul Sharvy, sheriff of St. Louis county, from an order of the District Court of that county, *Searle, J.*, made August 22, 1892, denying his motion for a new trial.

In March, 1890, James McCahill rented to George J. Whipple a store building in Duluth for $75 per month in advance. Whipple failed to pay after November, and on April 10, 1891, McCahill commenced an action to recover the rent; and on April 24th an attachment was issued, under which Paul Sharvy, the sheriff of St. Louis

county, seized the property found in the building. On May 2, 1890, judgment was rendered in the action against Whipple for $374, and the property was sold on execution. Afterwards the Cortland Wagon Company commenced this action against the sheriff, claiming he had seized and sold its property on the execution. The action was tried April 7, 1892, before Hon. D. B. Searle, Judge of the Seventh Judicial District, assigned to sit in the Eleventh, pursuant to Laws 1891, ch. 77. The jury were instructed to assess the value of the property taken, and return a verdict for the plaintiff for the amount. They did so, assessing the value at $799.82.

*Cash, Williams & Chester* and *Francis W. Sullivan,* for appellant.

Defendant contends that the contract under which the articles in Group A were furnished was a conditional sale, within the meaning and intent of 1878 G. S. ch. 39, § 15, and not merely a contract of agency. As this contract was never filed in the City Clerk's office, it was absolutely void as to the creditors of Whipple. *Rawson Mfg. Co.* v. *Richards,* 69 Wis. 643; *Fish* v. *Benedict,* 74 N. Y. 613.

As to Group B, appellant claims that the oral agreement modifying it, was void as to him, because no memorandum thereof was ever filed in the City Clerk's office, as required by that statute.

As to Group C, appellant contends that the bill of sale and receipt by which plaintiff attempts to bring it within the provisions of the contract, were fraudulent and void because not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things sold. No sufficient evidence of good faith and absence of intent to hinder, delay or defraud creditors in the transaction, was shown, as required by 1878 G. S. ch. 41, § 3. *Tunell* v. *Larson,* 39 Minn. 269; *Hopkins* v. *Bishop,* 91 Mich. 328; *Chickering & Sons* v. *White,* 42 Minn. 457; *Lathrop* v. *Clayton,* 45 Minn. 124.

The question of *bona fides* or *mala fides* therein, was one of fact, exclusively for the jury, and therein the court erred in directing a verdict for plaintiff. *Molm* v. *Barton,* 27 Minn. 530; *Vose* v. *Stickney,* 8 Minn. 75, (Gil. 51;) *Filley* v. *Register,* 4 Minn. 391, (Gil. 296.)

The evidence of the witnesses stricken out by the court, was clearly admissible as part of the *res gestæ*, and tended to characterize the possession of Whipple. *Murch* v. *Swensen*, 40 Minn. 421.

*John H. Brigham* and *Henry F. Greene*, for respondent.

The parties did not, by this contract, contemplate a sale of any kind or nature. The cases cited by appellant do not apply.

When the evidence is uncontradicted, unimpeachable and clear that there was no fraudulent intent, it is the duty of the court to instruct the jury that the plaintiff has met the burden of proof thrown on him by the statute, and that the verdict must be for the plaintiff. *Fish* v. *McDonnell*, 42 Minn. 519.

COLLINS, J. This was an action in the nature of conversion; the defendant justifying a seizure of the property, consisting of carriages, wagons, and sleighs, under an execution held by him as sheriff, and issued upon a judgment against one Whipple. The court below directed a verdict against defendant for the market value of the property, and the appeal is from an order refusing a new trial. Upon the argument here, counsel, for the sake of convenience, grouped the articles in controversy, and we will adopt the same arrangement. Group A consisted of articles made by the plaintiff corporation; group B, of articles made by the firm of Kingman, Sturdevant & Larrabee; and group C, of two phaetons and a road wagon purchased and placed in stock by Whipple, and included in a bill of sale from him to plaintiff.

1. The carriages and sleighs placed in group A, plaintiff claims, were consigned by it to Whipple, and that at all times he held the same as its agent, and in no other capacity, under a written contract executed by both parties, and which was produced upon the trial. That the articles mentioned in groups A and B were delivered to Whipple under the contract was not questioned, but defendant insists that upon its face the written contract shows the transaction to have been a conditional sale, within the purview of 1878 G. S. ch. 39, § 15, and hence as the instrument, or a true copy, was never filed, as required by section 16, it was absolutely void, as against Whipple's creditors. This view cannot be sustained. There

was no reason, so far as appears from the case, at the time of the execution of the contract, for evading the statute, and making that a consignment which was really a sale; and in every particular the contract is one of agency, for the handling by Whipple of carriages and sleighs of the grades made by plaintiff. No transfer of the absolute or general property to Whipple for a price in money, or for any other consideration, was agreed upon, nor was there a contingent agreement for such a transfer. A consignment contract, containing the provisions found in this, is not within the contemplation of the statute relied on.

2. No good reason can be advanced for saying that the plaintiff could not furnish to Whipple goods manufactured by another concern, and by an oral agreement with him bring the same under the conditions of the consignment contract previously made. This being so, the articles made by Kingman, Sturdevant & Larrabee must be treated as if delivered to Whipple under, and as if expressly mentioned in, the original agreement.

3. In regard to the phaetons and road wagons embraced in group C, the facts were that prior to January, 1891, Whipple had failed to account to the plaintiff for the proceeds of sales made by him under the contract. He had in stock, and for several months had been the owner of, these articles, which he proposed to plaintiff to turn out in satisfaction of its claim, in amount something above their value. An agent of the corporation, after examining the vehicles, accepted this proposition, taking a bill of sale of the same, with the intention and expectation of shipping, with other goods, to plaintiff's house in Chicago. Upon loading the freight car with the other goods, it was found that no room remained; and thereupon Whipple receipted for these articles as having been received and to be held by him as plaintiff's property, under the terms and conditions of the original consignment contract. Nothing was done to indicate a change of ownership, except to place upon each article a tag card bearing plaintiff's corporative name; and in this condition they continued to remain in Whipple's possession, in his carriage repository, until the morning of April 4th, when—and while the plaintiff's agent was engaged in crating them for shipment—defendant sheriff seized them under

a writ of attachment issued in an action against Whipple, in which the judgment before mentioned was afterwards rendered. From this statement it is apparent that the sale was not accompanied by immediate delivery, or followed by an actual and continued change of possession, of the chattels sold; and under the statute of frauds the sale on which plaintiff rests its title was presumptively fraudulent and void, as against Whipple's creditors. It was therefore incumbent upon the plaintiff to make it appear on the trial that it was made in good faith, and without any intent to hinder, delay, or defraud the vendor's creditors. At the trial, defendant, claiming that the sale was fraudulent and void as to Whipple's creditors, was allowed to show, under plaintiff's objections, that Whipple did not conduct his business as an agent, but as a principal; that, upon one side and on one window of the building he occupied, his name was printed, and the words "Carriage Repository" added thereto; and also that his name and these words were printed upon cards and letter heads used by him. The defendant, plaintiff again objecting, was further allowed to prove that Whipple had made certain statements in respect to the ownership of the goods in question after the bill of sale was made, and, particularly, that a day or two before the seizure he said to a prospective purchaser that the phaetons and the wagon, pointing them out, were his individual property, and that plaintiff had nothing to do with the same. These objections were followed by motions to strike out the answers to the questions; and, when ruling on the motions, the court stated that they might be renewed later in the trial. This was done when both parties had rested, and thereupon all of the testimony relative to the signs upon the side and the window of the building, and all that Whipple had said relative to his ownership of the vehicles, was withdrawn from the consideration of the jury. This was followed by a direction that a verdict be returned for plaintiff. There was no error in either of these rulings. The plaintiff had clearly, and beyond all doubt, removed the presumption of fraud arising out of the fact that there had been no change of possession; and it was the plain duty of the court, without regard to this testimony as to statements made by Whipple, to instruct the jury, as it did, in effect, that plaintiff had

completely met and overcome the statutory presumption of fraud and was entitled to a verdict. Although the question of fraudulent intent in cases arising under the provisions of the statute of frauds is by such statute made one of fact for a jury to determine, the section in question (1878 G. S. ch. 41, § 20) has no application where there is no conflict of testimony, and when, as a consequence, the jury could find but one way. If there be no controversy over the facts, the court has the same right to direct a verdict as in other cases. See *Fish* v. *McDonnell*, 42 Minn. 519, (44 N. W. Rep. 535.) Were the rule otherwise, as counsel for appellant seem to think, the verdict of a jury in cases arising under the statute of frauds would be conclusive.

It is well settled that, where a vendor of chattels continues in possession of the same, his acts and declarations while thus in actual possession, tending to characterize the same, may be given in evidence. *Murch* v. *Swensen*, 40 Minn. 421, (42 N. W. Rep. 290.) Part of the testimony received by the trial court under this rule— that in regard to Whipple's signs, cards, and letter heads, and also his statements as testified to by the witness Traphagen—was of very little consequence, one way or the other; but the statements said to have been made to Peachey, which we have particularly detailed, were of more importance, and, with other evidence affecting the *bona fides* of plaintiff's purchase, might have had a material bearing in favor of the execution creditor, and against the plaintiff. Under such circumstances rulings of the court excluding this class of testimony would have been erroneous; and undoubtedly it was upon this theory, in anticipation of such other evidence, that the learned trial court acted when disposing of defendant's objections. But on the uncontradicted evidence, as it stood at the close of the trial, and with all of Whipple's acts and declarations still in the case, there could have been but one sustainable verdict, and that in plaintiff's favor. In other words, the acts and declarations which tended to characterize the vendor's possession, standing alone, as they did, in opposition to plaintiff's proofs, would not have warranted a finding in defendant's favor. If the ruling striking out this testimony was erroneous, it was without prejudice.

From the conclusion that plaintiff clearly established its right to all of the property, as the owner thereof, it follows that the true measure of damages was the value of the converted articles.

Order affirmed.

(Opinion published 53 N. W. Rep. 1147.)