## NATIONAL SURETY COMPANY v. A. S. WITTICH AND ANOTHER.[1]

July 10, 1931.

No. 28,484.

*O'Brien, Horn & Stringer* and *McNeil V. Seymour*, for appellant.
*Courtney & Courtney*, for respondent.

LORING, J.

The plaintiff prevailed in an action as a creditor to set aside as fraudulent the transfer in September, 1920, of a ten-acre tract near Duluth from the defendant A. S. Wittich to his wife, Grace Wittich. There was no motion for a new trial. The appeal is from the judgment.

The land involved was acquired by Wittich in 1914. In 1918 the plaintiff became a surety on Wittich's bond as postmaster at Kelly Lake, Minnesota. In September, 1920, he became involved in diffi-

[1]Reported in 237 N. W. 690.

culties with his wife over his relations with a young woman. His wife contemplated leaving him, and, as she says, they were dividing their property "fifty-fifty." The ten-acre tract in suit was deeded to her through a conduit without other consideration than the settlement of the family controversy. At the time of this transfer Wittich had left Kelly Lake and one Barney Carron had been appointed acting postmaster but never qualified. Apparently Carron ran the office until Wittich's successor qualified early in 1921. On January 31, 1921, a government audit showed a shortage in the post office funds of $2,881.01. Plaintiff paid to the government the face of its bond, and in 1928 it recovered a judgment in its suit for reimbursement against Wittich. In September, 1920, neither Wittich nor his wife knew of the shortage. They knew of the pregnancy of the young woman with whom Wittich had been intimate. Wittich then owed no other debts and was the owner of an unencumbered farm in Canada, a small tract of land in Florida, and an interest in an orchard in Oregon. The value of these tracts is not disclosed by the record. There is also a reference in the record to a property at Kelly Lake which is not described or valued. In addition to these items he had $1,200 in liberty bonds, $800 in postal savings, and had an income of about $200 a month from his earnings.

The court found that the transfer was made in good faith without any intent to hinder, delay, or defraud the government or this plaintiff, but without consideration other than to keep peace in the family. It also found that defendants had no knowledge of any shortage in the post office funds when they made the transfer. The court made its conclusion of law that the transfers "be declared, in so far as they cover said real estate * * * to be null and void and of no force and effect." It made no finding as to Wittich's solvency, unless an inference in that regard can be drawn from the findings quoted.

The first point raised by appellant is that the plaintiff's case is barred by the statute of limitations. We cannot find that this point or that of the plaintiff's diligence was raised upon the trial. We therefore do not consider either.

Appellant contends that plaintiff was not an existing creditor and was not subrogated to the rights of the United States because it did not pay the entire debt to the government but paid only the amount of its bond, for which it would be entitled to reimbursement, not subrogation, and that its rights as a creditor did not originate prior to the date of the payment it made to the government. With this contention we cannot agree. When a contract of surety is made, an obligation is implied on the part of the principal that he will indemnify the surety for any payment the latter may make under the contract. Payment merely fixes the amount of damages for which the principal is liable and relates back to the time the contract was entered into. It follows that plaintiff became a creditor of Wittich for the purposes of this action from the time when the bond took effect. Stone v. Myers, 9 Minn. 287 (303), 86 Am. D. 104; U. S. F. & G. Co. v. Centropolis Bank (C. C. A.) 17 F. (2d) 913, 53 A. L. R. 295, 300; 50 C. J. p. 255. See also Barrett Bros. Co. v. County of St. Louis, 165 Minn. 158, 206 N. W. 49. In the case before us the marshaling of the principal's assets is not involved, as in U. S. v. Nat. Surety Co. 254 U. S. 73, 41 S. Ct. 29, 65 L. ed. 143, and Jenkins v. Nat. Surety Co. 277 U. S. 258, 48 S. Ct. 445, 72 L. ed. 874, cited by appellant.

We come now to the more difficult question of whether or not the conclusion of law that the transfer be adjudged void as against an existing creditor is supported by the finding of fact that it was made in good faith without intent to defraud. The respondent contends that the record shows conclusively that the transfer left Wittich unable to pay his existing debts. If that were so and this case were under the uniform fraudulent conveyance act, then the transfer could not stand if seasonably attacked. But the uniform act did not go into effect until after this transfer.

This is not a case where there is any evidence to support a claim that the grantee holds the title for the grantor as in Williams v. Kemper, 99 Minn. 301, 109 N. W. 242. The conveyance to Mrs. Wittich was wholly for her own benefit. It must be conceded that Wittich might in good faith convey property to his wife without consideration if the transaction did not leave him unable to satisfy

his creditors. Filley v. Register, 4 Minn. 296, 299 (391), 77 Am. D. 522; Underleak v. Scott, 117 Minn. 136, 141, 134 N. W. 731. That would be true either before or after the adoption of the uniform fraudulent conveyance act. That act provides that a voluntary conveyance which leaves a debtor insolvent is fraudulent without regard to actual intent. Prior to the act the rule prevailed as laid down in Underleak v. Scott, 117 Minn. 136, 141, 134 N. W. 731, 733, and in Wetherill v. Canney, 62 Minn. 341, 64 N. W. 818, 820. In the Underleak case this court said [117 Minn. 141]:

"We are met at the outset by the finding of the trial court that there was no intent to hinder, delay, or defraud creditors. We must assume this finding to be supported by the evidence, and unless other facts found show conclusively such fraudulent intent the conclusions of law must be sustained. The question of fraudulent intent is one of fact, unless the intent appears conclusively from the face of the instrument. A voluntary conveyance is presumptively fraudulent as to existing creditors, but it has long been settled in this state that it is not conclusively so. Filley v. Register, 4 Minn. 296 (391), 77 Am. D. 522. An intent by the grantor to hinder, delay, or defraud his creditors is a necessary element. The intent must exist at the time the transfer is made. It may be implied conclusively from the circumstances surrounding the transfer, as where a debtor is insolvent, or fails to retain sufficient property to amply satisfy existing claims against him."

In the Wetherill case it said [62 Minn. 345]:

"The question whether or not the deed is void as to the plaintiff depends on the fact whether or not it was made with the intent to delay or defraud creditors. The question of such fraudulent intent is one of fact, not of law; but where the facts are undisputed, and the inference of fraud therefrom inevitable, it is the duty of the court to direct a verdict accordingly. Fish v. McDonnell, 42 Minn. 519, 44 N. W. 535; Cortland Wagon Co. v. Sharvy, 52 Minn. 216, 53 N. W. 1147. In such cases, however, the direction of the court is not based upon the proposition that the transaction was a 'fraud in law' (whatever this term may mean), but on the proposition

that the evidence conclusively shows that the transaction was in fact fraudulent."

In the case before us the rule as announced in the cases last above cited governs, and good faith is a question of fact found in favor of the defendants and no other circumstances are found by the trial court which as a matter of law overcome such finding. The finding of good faith negatives the inference that Wittich's financial condition was such as to necessitate a finding of fraudulent intent. Much evidence is in the record as to Wittich's circumstances. Much more would doubtless have been helpful to the trial court, but its finding of good faith is not here for review nor was it challenged by respondent in the court below. That court in making its conclusion of law seems to have regarded the existence of the debt created by the execution of the bond and the fact that there was no valuable consideration for the deed as making the transfer fraudulent in law even if made in good faith. This was the view taken by some of the English cases carefully considered and rejected in Filley v. Register, 4 Minn. 296 (391), 77 Am. D. 522.

A set of findings somewhat similar to those at bar was before this court in Wetherill v. Canney, 62 Minn. 341, 344, 64 N. W. 818. There it was found as a fact by the trial court that there was no design on the part of the grantors to defraud but that the transaction was, "in law * * * presumed to be fraudulent." It appeared conclusively that one of the debtor grantors was left solvent by the transfer and that the other was left insolvent. This court held that the conclusion of law was not sustained by the findings of fact and ordered judgment for the defendants. It said [62 Minn. 347]:

"We have not overlooked the fact that the court found that the defendant Julia A. was insolvent at the time the deed was made; but, assuming that this finding is supported by the evidence, the inference, in view of the other facts found, does not inevitably follow that she in fact intended to defraud the plaintiff by the execution of the deed in question.

"Our conclusion is that, in the absence of any finding of fact in this case to the effect that the deed in question was made with the intent to defraud the creditors of the grantors, the conclusion of law by the trial court, that the deed is void as to the plaintiff, is not sustained by its findings of fact."

In the case at bar the court found good faith in the transfer, and therefore the conclusion of law that it was void is not supported by the findings of fact. The case of State Bank v. Walter, 167 Minn. 37, 208 N. W. 423, cited by respondent, was one where there were numerous badges of fraud besides the lack of consideration, and the trial court found fraudulent intent in the transfer.

The judgment is reversed and the case remanded for further proceedings in accordance with the views here expressed.

[1]Reported in 237 N. W. 690.