IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

Richmond.

BURKS v. HINTON.

Absent, *Hinton*, J.*

January 15th, 1883.

1. CONSTITUTION—*Legislature—Vacancies—Judges.*—The constitution of Virginia (art. v., § 22,) authorizes the legislature to prescribe the manner of filling *all vacancies in office*, and to declare when an office is vacant, in cases not specially therein provided for, and makes no exception as to the office of judge.

2. IDEM.—This was the construction, contemporaneously, by the convention in striking out the only provision making any such exception, and subsequently, by the legislature in enacting its joint resolutions in 1869 and in 1872, and is in accordance with the principles of the decision of this court *in re Broadus*, 32 Gratt. 779.

3. IDEM—*Constitutionality.*—The joint resolution of December 18th, 1872, (Acts 1872-3, p. 1,) providing that "all elections by the general assembly to fill vacancies in the office of judge, shall be for the unexpired term of his predecessor," is constitutional.

---

* Judge *Hinton* was a party to the controversy.

4. ERRONEOUS.—The decision of this court *in re Meredith,* 33 Gratt. 119, declaring said joint resolution unconstitutional, is sustained neither by contemporaneous nor legislative construction, nor by the reasoning of the judge who delivered the opinion, and is erroneous.

5. STARE DECISIS.—The doctrine of *stare decisis* grows out of the necessity for a uniform and settled rule of property and definite basis for contracts and business transactions. If a decision is wrong, it is only when it has been so long the rule of action, that time and its continued application as the rule of right between parties, demand the sanction of its error, that this doctrine applies. It does not apply to questions of the construction of organic law.

6. OVERRULED.—The decision *in re Meredith (supra)* is not within the rule of *stare decisis,* and must be overruled.

7. CASE AT BAR.—In 1876, E. C. B. was elected and commissioned a judge of this court, to fill the vacancy caused by the death of Judge B. In 1882 H. was elected and commissioned a judge of this court, to occupy the seat held by E. C. B., who claimed to have been elected for the full term of twelve years, and not for the unexpired term of his predecessor. On the question thus raised ;

HELD :

     1. E. C. B. was elected to fill the unexpired term of twelve years, beginning January 1st, 1871, and his term expired December 31st, 1882.

     2. H. is a judge of this court, and is entitled to occupy his seat upon this bench.

The nature of the questions involved and the facts of the case, are fully set forth in the opinion of the court.

*W. W. Henry, John H. Guy* and *James Alfred Jones,* for E. C. Burks.

*J. S. Budd, George S. Bernard* and *Attorney General F. S. Blair,* for D. A. Hinton.

LACY, J., delivered the opinion of the court.

This is a contest between Hon. Drury A. Hinton and Hon. Edward C. Burks for a seat upon the bench in this court. Hon. Drury A. Hinton presents, and causes to be recorded, his commission as judge of this court, and qualification thereunder

according to law, for the term of office beginning January 1st, 1883, and continuing for twelve years. Hon. Edward C. Burks was elected judge of this court in December, 1876, to fill the vacancy caused by the death of Judge Wood Bouldin. Judge Burks claims that by virtue of his election as judge of this court to fill the vacancy caused by the death of his predecessor, he is entitled to continue to occupy a seat upon this bench, although his successor has been elected by the legislature and commissioned by the governor for the term commencing on the first day of January, 1883, and was duly qualified, because the term of office of a judge of the court of appeals of this state is fixed at twelve years by the constitution; and therefore no judge can be elected for a shorter period than twelve years. The question in this case then is: Was the said Hon. E. C. Burks elected for the full term of twelve years, or for the unexpired term of his predecessor—to-wit, until the thirty-first day of December, 1882? If Judge Burks was elected for twelve years, and began his term in December, 1876, then he is still a judge of this court, and Hon. Drury A. Hinton is not entitled to that seat. But if Judge Burks was properly elected to fill the unexpired term of his predecessor only, then that term having expired on the last day of December, 1882, *his term* has expired, and Hon. Drury A. Hinton having been elected and commissioned, and duly qualified as his successor, is entitled to occupy that seat as a judge of this court, his term having commenced on the first day of January, 1883.

On the 18th of December, 1872 (see Acts of Assembly 1872–3, page 1), the general assembly of Virginia passed the following joint resolution, which was approved by the governor and has the force of law : "That all elections by the general assembly to fill vacancies in the office of judge shall be only for the unexpired term of his predecessor." As Judge Burks was elected after the passage of this joint resolution, and confessedly elected to fill a vacancy—to-wit, the vacancy caused by the death of his predecessor (see Judge Burks' commission of record in this

court)—this legislative enactment of December, 1872, is conclusive as to his length of term, he having been elected to fill this vacancy in December, 1876, unless it can be shown that the legislature was without authority to pass this joint resolution, because of some provision in the constitution depriving it of the power so to legislate. This brings us to consider the constitution on this subject.

If (as is distinctly conceded by the counsel for Judge Burks) the legislature had the power to pass this joint resolution, then that is an end of this question. Did the legislature have this power? The legislature had the power to pass this joint resolution, as will not be denied, unless prohibited by the constitution. Does the constitution so prohibit the general assembly from such legislation?

In article v., section 22 of the constitution, we find the following: "The manner of conducting and making returns of elections, of determining contested elections, *and of filling vacancies in office in cases not specially provided for by this constitution, shall be prescribed by law.* And the general assembly may declare the cases in which any office shall be deemed vacant where no provision is made for that purpose in this constitution." There is no prohibition upon the legislature here to prohibit the prescribing by law how vacancies in office shall be filled where a vacancy exists, and no prohibition to prevent the legislature from declaring the cases in which all offices shall be deemed vacant, except in a case where provision is made for that purpose by the constitution itself. In the first article of the constitution, section seven, it is provided: "That the legislative, executive, and judicial powers should be separate and distinct, and that the members thereof may be restrained from oppression by feeling and participating in the burthens of the people, they should, at fixed periods, be reduced to a private station—return into that body from which they were originally taken, and *the vacancies be supplied by frequent, certain and* REGULAR *elections,* in which all

or any part of the former members to be again eligible or ineligible, as the laws shall direct."

Article iv, section 1.—"The chief executive powers of this commonwealth shall be vested in a governor. He shall hold office for a term of four years, to *commence* on the first day of January next succeeding his election," &c.

Section 9.—"A lieutenant-governor shall be elected at the *same time* and for the *same term* as the governor."

Article v, section 2.—"The house of delegates shall be elected biennially by the voters of the several cities and counties, on the Tuesday succeeding the first Monday in November," &c.

Section 3.—"The senators shall be elected for the term of four years, &c.  *  *  *  *  *  *  *  The senators first elected under this constitution, in districts bearing odd numbers, shall vacate their office at the end of two years, and those elected in districts bearing even numbers, at the end of four years. And vacancies occurring by *expiration of term*, shall be filled by the election of senator for the full term.  *  *  *"

Article vi, section 1.—"There shall be a supreme court of appeals, circuit courts, and county courts," &c.

Section 2.—"The supreme court of appeals shall consist of five judges, any three of whom may hold a court," &c.

Section 5.—"The judges shall be chosen by the joint vote of the two houses of the general assembly, and *shall hold their office for the term of twelve years*," &c.

Section 8.—"At every election of a governor, an attorney general shall be elected," &c.

Section 11.—"For each circuit a judge shall be chosen by the joint vote of the two houses of the general assembly, who shall hold his office for the term of eight years, unless sooner removed in the manner prescribed by this constitution," &c.

Section 13.—"In each county of this commonwealth there shall be a court called a county court, which shall be held monthly by a judge learned in the law of the state, and to be known as the county court judge.  *  *  *  They shall hold

their office for the terms of six years, except the first term under this constitution, which shall be for three years," &c.

Section 14.—"For each city or town in this state containing a population of over five thousand, there shall be elected on the joint vote of the two houses of the general assembly one city judge, * * * * who shall hold his office for a term of six years: provided that in cities or towns containing over thirty thousand inhabitants, there may be elected an additional judge to hold courts of probate and record."

Section 16.—"One commonwealth's attorney, * * * * * who shall hold his office for a term of two years."

Section 17.—"One city sergeant, who shall hold his office for a term of two years," &c.

Section 18.—"One city or town treasurer, who shall hold his office for a term of three years."

Section 20.—" * * * * All other officers whose election or appointment is not provided for by this constitution shall be elected by the people, or appointed, as the general assembly may direct."

Section 22.—"All the judges shall be commissioned by the governor, and shall receive such salaries and allowances as may be determined by law, the amount of which shall not be diminished during their *terms of office*. Their terms of office shall commence on the first day of January next following their appointment; and they shall discharge the duties of their respective offices from their first appointment and qualification under this constitution until their *terms begin*."

Section 23.—"Judges may be removed from office by a concurrent vote of both houses of the general assembly, but a majority of all the members elected to each house must concur in such vote, and the cause of removal shall be entered on the journal of each house," &c., &c.

Section 25.—*Judges and all other officers*, elected or appointed, shall continue to discharge the duties of their offices

after *their terms of service* have expired, until their successors have qualified," &c.

Article vii, section 1.—"*County Organizations.*—\* \* \* and all officers elected or appointed under this provision shall enter upon the duties of their offices on the first day of January next succeeding their election, and shall hold their respective offices for the term of three years, except that the county and circuit court clerks shall hold their offices for four years," &c.

Section 2.—*Township Officers.*—" \* \* \* who shall enter upon the duties of their respective offices on the first day of July next succeeding their election," &c.

These sections have been changed by the constitutional amendments; they are found, however, in the constitution as originally adopted.

Article viii, section 1.—"The general assembly shall elect in joint ballot, within thirty days after its organization under this constitution, and every fourth year thereafter, a superintendent of public instruction."

We have thus seen the constitutional provisions as to terms of office, as to all offices of every class. It is claimed by the counsel for Judge Burks, that while a distinct period is fixed for the beginning and ending of every other office, as to the office of judge, the distinction is very marked. How is this assertion borne out by the constitution itself? By the twenty-second section of article six, it is provided that their terms of office shall commence on the first day of January next following their appointment. If they were not to end together, why make them commence together? If the constitution contemplated a term of twelve years for each judge, in every case, and no more and no less, why provide that they should discharge their duties respectively until a day certain in the future, when their terms of twelve years should all begin together, and thus necessarily all end together? If each judge was to have exactly twelve years, why not provide that each judge should begin his term as soon as he was elected and qualified, and hold for twelve years?

It is evident that the intention of the convention was to form a a court of five judges for the court of appeals, who should begin their terms of office together, and go out together, at the end of their term.

This same provision is to be found with reference to the governor, the lieutenant-governor, the attorney general, all county officers, all district and township offices, and all the offices in this constitution. All are to be elected or appointed; then to wait for a day certain in the future, and then begin a prescribed term together, each class having the same day to begin its term and the same day to end its term.

County officers elected by the people in November, to begin their terms of office on the first day of January next following their election. Township officers to be elected in May, and to begin their terms all together on the first day of July.

Judges for the court of appeals elected by the legislature to begin their terms on the first day of January next following, and to hold for twelve years and then all to go out of office.

Circuit judges to be elected by the general assembly, and their terms to begin the first day of January next following their election and to hold for eight years and then to go out together as a class.

County court judges to be elected by the general assembly, but to go into office on the first day of January next following their appointment, to begin their terms together and to end them together.

Here the convention shows distinctly that it had in contemplation the *expiration* of their term. The term is fixed at six years, but as the expiration of the second period of six years would concur with the expiration of the first term of the court of appeals, judges who were to hold for twelve years, and also the second period for corporation judges, in all probability to keep these classes distinct, it is provided that the first county judges elected should be elected for a term of *three* years only, a provision which experience has shown to be a wise measure on

the score of *convenience* in electing the large number of county judges, and perhaps for other reasons. And thus upon a contemplation of the scheme of the government as contemplated by the convention we find that *that body* never lost sight, throughout all of its deliberations, of the seventh section of the first article, previously adopted, and which we have seen already—that all the officers of the government, whether legislative, executive or judicial, should at *fixed* periods be returned to a private station, and the vacancies be supplied by frequent, *certain* and *regular* elections. Throughout the whole scheme of the constitution we can find no variance from this rule. All the officers have fixed terms, and all these terms have fixed, definite future time to begin, and a fixed, definite day to end; and, as we have seen, *judges* are not only not excepted, but are expressly in terms included in the general plan.

We come now to the question, how, under this constitution, vacancies occurring in office are to be filled. We have seen under the twenty-second section of the fifth article that the manner of filling vacancies in office, not specially provided for by this constitution, shall be prescribed by law. It is earnestly and seriously contended that this section applies to filling vacancies only in offices other than judges, that judges are not included, and not intended to be included in the term officers generally.

Judges, it is true, are not specially mentioned in this section, nor is any other class specially mentioned—the language is "filling vacancies in office"—and we have seen already that judges and other officers are included in the same terms throughout the constitution.

It has been argued in this case that some light may be thrown upon this section by cotemporaneous construction, and by comparison of this section in the present constitution with the corresponding section in the constitution of this state, which immediately preceded this constitution.

In the constitution of 1864, which was the immediate prede-

cessor of the present constitution, and in force at the time of the adoption of the present constitution, we find the section corresponding to this section to read as follows:

"The manner of conducting and making returns of elections, of determining contested elections, and of filling vacancies in office, not specially provided for by this constitution, shall be prescribed by law; but special elections to fill vacancies in the office of judge of any court shall be for a full term. And the general assembly may declare the cases in which any office may be deemed vacant, when no provision is made for that purpose in this constitution."

In the constitution immediately preceding the constitution of 1864—to-wit, the constitution of 1851—we find the corresponding section in that instrument to be in all respects the same as in the constitution of 1864. And we find this provision in the words concerning judges appearing for the first time in the constitution of 1851. Before the constitution of 1851 there was *no such* provision providing how vacancies in the office of judge should be filled. In the constitutions preceding the constitution of 1851, it would seem that the constitutions provided, though not in express terms, for the filling of vacancies in the office of judge. Under the constitution of 1829–'30, the judges held office for life; the beginning and ending of the judicial term was thus fixed:

The tenure was life or good behavior in each case; when the life terminated, or the removal for cause took place, then the term ended, and the constitution prescribed in *precise terms* the tenure of the succeeding judge. He took the vacant office from the time of his own appointment until his death or removal, or voluntary retirement. There could, therefore, be no such thing as the unexpired term of a judge.

But under the constitution of 1851, the life tenure was abolished, and it was provided that judges should be elected by the

people, and hold for a term of years; and so in the section to which reference has been made, it was provided that special elections to fill vacancies in office generally should be as provided by law. But the convention provided that special elections should be held for the election of judges in every case; that no election of judge should be held within thirty days of any political election (article 6, section 16 of constitution of 1851).

The constitution of 1851 left the filling of vacancies to the legislature in every case, except in the case of vacancy in the office of judge, and as to judges, and in the same section, provided as we have already seen for the exception in the following language: *"But special elections to fill vacancies in the office of judge of any court shall be for the full term."*

Under that constitution, the vacancy occuring in the office of judge was filled by the election of a judge for the full term, as was plainly provided in the constitution itself. The legislature, under that constitution, in the exercise of powers not denied it by the constitution, provided that elections to supply vacancies shall be for the unexpired term of such office, except in such cases as are provided for by the constitution.

(See Acts of 1857–8, ch. 2, sec. 80.)

The constitution of 1864 followed the constitution of 1851. Under the constitution of 1864, it was provided that "the judges shall be chosen by the joint vote of the two houses of the general assembly from persons nominated by the governor."

The convention, when engaged in framing the constitution of 1864, changed the mode of electing judges, but retained the provision providing for the filling of vacancies in the office of judge, and provided that vacancies in the office of judge should be filled for the full term, thus retaining the *exception* as to filling vacancies in the office of judge, that mode to be for the full term, while it was still left to the legislature to prescribe the manner of filling vacancies in all other offices, although the judges were to be, under that instrument, elected by the legislature.

When the convention which framed the constitution, which was adopted July, 1869, came to consider this section, with regard to the filling of vacancies in office, and to prescribe when any office should be deemed vacant, (which is sec. 22 of art. v. of this constitution, was sec. 38 of art. iv. of the constitution of 1851, and was sec. 35 of art. v. of the constitution of 1864), the convention adopted the provision as to officers generally, in general terms, and left out the clause which provided for *an exception in the manner of electing judges,* to fill vacancies in the office of judge, and so far as that section goes, left the legislature to provide the manner of filling vacancies *in all offices.*

It is, however, contended that the section does not have any reference to judges when it refers to officers generally; that judges are the peculiar favorites of the constitution, and that as it does not in terms provide that vacancies in the office of judge should be filled by elections for the unexpired term, or that the legislature shall have the power to prescribe how the vacancy occurring in the office of judge shall be filled, that the legislature cannot prescribe the manner of filling vacancies in the office of judge, because the constitution declares that judges shall hold their offices respectively for twelve years as to one class, for eight years as to another class, and for six years as to two other classes.

In construing this constitution on this point we will consider the plain meaning of the language used first, and if it is necessary in order to discover the *intention* we will look to the proceedings of the convention which framed it and seek there to discover distinctly the intention of the framers of the instrument.

Thus far we have reasoned from the term of the constitution, and have derived our conclusions from what appears upon the face of the instrument. But if, departing from this, we look into the debates of the convention which framed the constitution, in the history there afforded of the section of the constitution under which the great question in this case

arises, into the *intention* of the framers of the constitution as expressed in debate, we shall find abundant confirmation, and, it seems to me, demonstrative evidence of the correctness of the views we have taken and of the conclusions at which we have arrived." (See 7th Ohio State R. 173.) (Opinion of Brinkerhoff, J.)

One mode of construing this section is to take the constitution as we find it, without reference to the manner in which its different parts were proposed and adopted, and another is to look at the proceedings of the convention and endeavor thereby to discover the probable intention of the framers of the constitution as we now find it. In either case we must look into the actual state of things which existed when the constitution was framed and adopted. (26 Wendell, 602, *Clarke* v. *The People,* opinion of Chancellor Walworth; see also *Constant* v. *The People,* 4 Wendell, 515; *People* v. *New York Cen. R. R.,* 24 New York, 496). In *Mathews and Garner* v. *The Commonwealth,* 18th Gratt. 989, opinion of Moncure, P., it is said: "We have looked to the printed journal of the house of delegates for 1866–7, during which this act was passed, and it conclusively shows that our construction is correct. In the case of the *Baltimore and Ohio Company* v. *Wightman's adm'r,* 29th Gratt. 438, opinion of Staples, J., says:

" We think it is very clear that the framers of these enactments had before them at the time the English and New York statutes on the same subject, from which the statutes of the different states of a similar character are generally taken. It will be perceived that our legislature has omitted some of the provisions of these statutes and materially changed the phraseology of others. Thus, the English statute requires the plaintiff to file with his declaration a full particular of the person or persons on whose behalf the action is brought. Our statutes contain no such provision, and the very fact that it is omitted, whilst other provisions of the English statutes are adopted, would seem to

indicate a deliberate purpose on the part of the legislature to dispense with such statements."

In the case of·*Robertson* v. *Clopton, Judge, &c.* (Law Journal, 1881), opinion of Staples, Judge: "There are no other provisions in the constitution having any bearing on the subject. When the framers of that instrument *deliberately omitted* the disqualifying·causes affecting the commonwealth's attorney, without substituting others in their place, we must suppose it was intended that this disqualification should thereafter cease."

Upon an inspection of the journal of the convention which framed the present constitution, we find that the committee on the legislative department reported to the convention for its adoption the 22d section of the 5th article, in the precise words as it is found in the old constitution, so that it was proposed to the convention by the said standing committee that in providing that the manner of filling vacancies should be prescribed by law, it was proposed to except judges who should, when elected to fill vacancies, be elected for the full term, and not for the unexpired term. Upon the presentation of this section by the committee on the legislative department, a member of the committee on county courts, &c., moved to strike out the words, "But special elections to fill vacancies in the office of judge of any court, shall be for the full term," and it *was agreed to ;* and then the section as amended was adopted. The convention then struck out, after consideration and with deliberation, the exception contained in the section which provided for the election of judge to fill a vacancy in the office of judge, to be for the full term, and not for the unexpired term, and then adopted the section as we find it, providing that the manner of filling all vacancies in office shall be prescribed by law—that is, by the legislature—and thus, as we have seen, striking out *the only provision* to be found in the constitution which made any distinction between the office of judge and any other office, as to filling vacancies therein. Are we not to suppose, then,

that the convention *intended*, as it had *in terms provided*, that the manner of filling *all vacancies in office should be prescribed by law ?*

"This provision does not seem obscure or doubtful; but if it so appears, we are told by a great authority that 'in seeking aid to construe an obscure or doubtful statute considerable weight is attached to the opinions in regard to it, entertained by persons learned in the law at the time of its passage.' 'Great regard,' says Lord Coke, 'ought, in construing a statute, to be paid to the construction which the sages of the law, who lived about the time, or soon after it was made, put upon it, because *they* were the best able to judge of the intention of the makers at the time when the law was made;' and this, in the terse and admirable language of the civil law, as is expressed by the maxim *contemporanea expositio est fortissima in lege.* As we shall see hereafter, this same principle has been applied in this country to a certain extent in the construction of the constitution."

What was the cotemporaneous construction of this section of the constitution to which we have referred? We have seen the framers of the constitution strike out the only distinction to be found in that section between the manner of filling vacancies in office; and we look in vain in any other section of the constitution for any distinction in the manner of filling vacancies in office.

"The exposition of statutes by subsequent legislative bodies has weight." Sedgwick on Construction, &c., page 214.

What has been the legislative exposition of this section?

The very legislature, chosen at the same time this constitution was ratified by the people, lost no time in construing this section of the constitution, and at its first session in providing, one after another, for the filling of *all vacancies* in *every office*, from the highest to the lowest township office by election for the *unexpired term;* and then, as if their authority in the premises was wholly free from constitutional limitation, de-

clared as follows: "*Provided*, that the term of office of *any person* chosen at a special election to fill a vacancy in *any public office* shall commence as soon as he shall qualify for the performance of the duties of the office to which he is elected, and shall be *for the unexpired term of such office.*" Session Acts 1869–'70. And at the same session proceeded to elect judges and all other officers elective by the legislature; and, in 1872, provided as we have seen, that judges should be elected only for the unexpired term when elected to fill vacancies.

This law was passed by the legislature in pursuance of this section and in construction of it, before Judge Burks was elected to this bench—several years before. So the law was written, and so the law appears until the expiration of the three years from the first day of January, 1871, (at which date all judicial terms in this state began,) and when, in 1873, the legislature elected the large number of county judges, whose terms *began* on the first day of January, 1874, to run for six years, we find, by reference to the legislative journal, that the legislature elected a county judge for every county, or county court district in the state; not one being omitted.

When the six-year term for corporation judges expired, the legislature elected judges for all the corporations entitled to one under the constitution, and not one claimed to hold over. And so when the eight-year term of the circuit judges was about to expire, on the first day of January, 1879, we find by reference to the journals of the preceding legislature, to wit: 1878–9, that the legislature elected judges for every circuit in the state, except two, and that these two were *new* circuits created by the legislature by dividing existing circuits, and the declaration is found on the journal, that, in the new circuits, the term had not expired; whereas in two circuits wherein vacancies had been caused in the years 1874 and 1875, respectively, by resignation of the judges, and judges had been elected in each circuit, to fill the vacancy; one in 1874 and one in 1875. The legislature declared that the term of the incumbents would expire on the

last day of December, 1879, which was the end of the original term of eight years, which the predecessor of each judge would have had, if he had not resigned. And, indeed, as has been cited by counsel, the legislature gave forcible expression to their construction of the constitution on this point, "when both bodies declared that the circuit judges, who were elected to fill vacancies, are entitled to hold office under said election *only during* the unexpired terms for which *their predecessors were originally chosen.*"

In article six of the constitution, which exclusively concerns the judiciary department, there is no provision for filling vacancies in judicial positions, but in article five, which relates to the legislative department, it is provided, as we have seen in the twenty-second section already cited and examined.

Pursuing the requirements of the constitution, the general assembly in 1869–'70 elected sixteen circuit judges, whose terms of office commenced (under section twenty-two, article six of the constitution), on the first day of January, 1870, for eight years, expiring January 1st, 1879. And subsequently thereto, by virtue of section twenty-two, article five, it adopted a joint resolution, which reads as follows:

"*Resolved by the senate* (the house of delegates concurring), That all elections by the general assembly to fill vacancies in the office of judge shall be only for the unexpired term of his predecessor." Acts 1872–'3, page 3.

On the senate journal of 1874 we find the following entry: "Henry E. Blair having received all the votes cast, was declared duly elected judge of the fourteenth judicial circuit for the unexpired term of Judge Mahood, resigned"—a complete illustration of the legislative construction of the twenty-second section of article five of the constitution. In 1879, the second expiration of term of county judges coming around, the legislature proceeded *without question* to fill all the county judgeships, holding (*nem con* in any department of the government) that the regular period for that class of judges to hold office having expired, all

the county judges went out of office together, as their predeces-
sors had done, at the end of the regular term—they were all
commissioned by the governor without question, but the general
assembly which met in December, 1879, not completing the
election of all the county judges before the first day of January,
1880, when the new terms began, a dispute arose among those
elected after the beginning of the regular term and their prede-
cessors, that as the new judges were elected after their terms
began, to wit, the first day of January, 1880—that under the
twenty-second section of article six, which declares their terms of
office shall commence on the first day of January next following
their appointment, &c., the new judges could not go into office
until the first day of January, 1881; and that under the twenty-
fifth section of the same act, which declares that judges and all
other officers, elected or appointed, shall continue to discharge
the duties of their offices after their terms of service have expired
until their successors have qualified, the old judges would be
entitled to hold their offices until January 1st, 1881, and receive
the emoluments of the same.    This question led to the decision
of the case *in re Broadus* in this court, reported in 32 Grattan,
779, and here we will leave the question of cotemporaneous and
legislative construction and follow the subject in our enquiries
into the courts, where this section has been judicially con-
sidered and passed on.    In the case *in re Broadus, &c.,* Judge
Moncure, who delivered the opinion of the court, said: "Now
a *term* of *six years of the county court judgeships* of the state
*commenced* on the first day of January, 1880—a like term of
these same judgeships having ended on the preceding day—to-
wit, the thirty-first day of December, 1879.    No doubt it was
expected and intended that all the judges who were to act
as such on and after the first day of January, 1880, would
be appointed, and would qualify on or before that day.    But
only a portion of the said judges then was appointed and
qualified.    Still, whether they were appointed and qualified
on, before, or after that day, the term of office to which they

were appointed respectively commenced on the same day—
to-wit, the first day of January, 1880—and was to continue
for the period of six years thereafter.    Certainly it was not
the intention of the framers of the constitution that the terms
of the particular judgeships might begin and end on different
days.    They intended the contrary, and fixed upon the first day
of January as the proper day for that purpose, though that day
was a long way off when the constitution was adopted and went
into operation."

Here we see *this court*, in terms and with emphasis, endorsing
the legislative construction of the twenty-second section of article
five of the constitution : for if (all the county judges in office in
December, 1879, went out of office on the 31st day of December,
1879, the expiration of the six-year period for all the county
judges by express mandate of the constitution), as the court
unanimously affirms in this case, then Hon. John C. Weedon
was elected for an unexpired term—(for Christian, Judge,
while he delivered an opinion in some respects differing with
the reasoning of Judge Moncure, he in express terms agrees
with him in this.)    Christian, Judge, says : "So 'that it is
plain that under the twenty-fifth section, Minor, whose term
of office was limited by the constitution to the first day of
January, 1880," etc.    It might often happen that from some
unforeseen cause or accident the legislature could not, from
mere physical impossibility, elect all the county judges be-
fore the first day of January, there being about eighty in all.
And this manifest difficulty would often arise, that while *their*
terms ALL *expired on the first day of January*, each one would
hold over one year longer than the term fixed by the constitu-
tion.    Thus upon the question we are here called upon to decide
we find this court, when so called upon, unanimously endorses
the view we have taken, and so expressly declared.    For it was
a fact well known to this court that out of this large number of
eighty county judges some had died and some had resigned
during the six-year term for which they were originally elected,

and it was a matter of history that every legislature which assembled during that period had been called on to elect judges to fill vacancies in the office of county judge.

The effect and force of this decision as a judicial construction of the constitution, is sought to be diminished, if not entirely destroyed, by counsel for Judge Burks, by strongly assailing the mental capacity of Judge Moncure, who delivered the opinion of the court in this case, on account of age or bodily infirmity. If this be true of Judge Moncure, what becomes of the *other two* judges? in a court of three, they constituted the majority of the court, and were fully able to prevent the mischief they complained of; but *they both concurred;* one dissented on one point, but concurred on the only question of importance here. However that may be, it was the *unanimous decision of this court,* and *is a judicial construction of the constitution, by this court,* sustaining the cotemporaneous and legislative exposition hereinbefore referred to. We are referred, in the printed report, to the fact that Judge Staples did not sit because of the interest of his brother, and that Judge Burks, the petitioner here, did not sit because he was personally interested in a kindred question. What that kindred question was that record does not disclose more distinctly, but we may suppose that *in this controversy* we have the explanation. Therefore it cannot be contended that when this court unanimously construed the constitution on that subject, that the subject-matter of this controversy was not *considered.* It was uppermost in the mind of at least one of the five judges, and was in an emphatic manner brought to the mind of the whole court by the retirement of Judge Burks.

It is argued by counsel for Judge Burks now, that this case has been settled in this court by a subsequent decision to be found in the 33d volume of Grattan's reports—*in re Meredith.* That, in that case, this court declared the law of 1872, prescribing the mode in which vacancies in the office of judge should be filled, to be unconstitutional, null and void, because it is repugnant to the provisions of the constitution on this subject;

but many of the cases, as we have seen, relied on in the opinion of Judge Staples in the Meredith case, do not support his conclusion; but the opposite. In *Sansbury* v. *Middleton*, 11 Md. 296, which was a case of a clerk elected to fill a vacancy, the constitution of that state provided that the state's attorney, elected to fill a vacancy, should be elected for the unexpired term of his predecessor; but there was no such provision as to the clerk, who took a stated term. Where is the application of that case as authority in this? So in the case of *Marshall* v. *Howard,* 5 Md. 423. In that case the constitution had made no provision for filling a vacancy in the office of librarian, nor was that authority granted to the legislature, so it was held that the constitutional term obtained.

In the case of the *People* v. *Green,* 2 Wend. 266, the court construed the constitution of New York, which is altogether different from the constitution of this state, is a case in favor of our view conversely. *Crowell* v. *Lambert,* 9 Minn. 285. In 3d Sneed 6, *Keys* v. *Macon,* and *Brewer* v. *Davis,* 9 Humphrey, 208, from Tennessee, the question turns upon the provision of a constitution, not like ours in all respects, because there we are without the light of the constitutional exposition which we have considered here. In Smeedes and Marshall's report, in the case of *Hughes* v. *Buckingham,* the constitution of Mississippi is construed; and while that is different from the Virginia constitution, there was *another* important distinction as to the particular office in question, that no period was fixed for the beginning of his office in the constitution or in the acts, and it was held that his term therefore began from his appointment.

The decision of the court *in re Meredith* cannot be sustained upon the reasoning of the judge who delivered the opinion.

It proceeds upon the declaration that the constitution of Mississippi, and other states mentioned, contain similar provisions to our own; what these similar provisions are we are left to conjecture; and upon a careful examination of the said constitution we have not found them, unless reference is had to the

fact that they all declare distinct and definite periods for the terms of officers of the government.

It is not pretended that these constitutions contain the identical provision which is contained in the constitution of this state, and so the decisions construing them upon the tenure of office are not applicable to the case in hand. In one constitution there cited the provision is the same, as we have said, but the distinction in that case is broad enough, because we do not find there the deliberate *striking out* of the provision in the constitution which was proposed to provide that elections to fill vacancies in the office of judge should be for the full term. If the constitution of 1867–'8 had desired that elections of judge to fill vacancies which should occur in the office of judge should be made by elections of a judge for a full term, all it had to do was to adopt the report of its committee, as we have seen; but it refused to adopt the entire report. And what was necessary to be done to provide that the legislature should determine the manner of filling all vacancies in office, was to strike out the provision which made an exception of the office of judge (for so the committee had reported it), and the convention *did strike out the clause in the said committee report which made an exception as to judges;* so it does not seem to be a violent presumption that the convention intended to leave the question as to vacancies in all offices to the legislature, *and not to make any exception in favor of judges.* It is no argument to say the constitution of Mississippi, New York, or any other state, makes no such provision as the twenty-second section, article five; it ought not · to be in the Virginia constitution; judges ought to be independent; judges ought not to be dependent upon the will of the legislature, which is so often influenced by recent political excitement, and bears about it the heat, and dust, and stain of the hustings, and may have garments stained in the dirty pool of politics;—all that might have been addressed to the convention which framed the constitution, but it has no place before this court. The con-

stitution, the supreme law of the land, placed that power in the hands of the legislature; and while it may be well hoped that the legislature may wisely use it, it is in their hands, and there it must remain—until taken away by the people of this state, it will not be, it ought not to be, it cannot be taken out of the legislative hand by this court; such a decision would be in defiance of the constitution, and would be but futile endeavor—would be (like the decision of this court in *ex parte Meredith*) but JUDGE-MADE law (as to judge-made law see *Spencer* v. *State*, 5 Ind., 76), and would not long survive. It has been eloquently argued by counsel that to overrule *ex parte Meredith* would be to put the courts at the feet and at the mercy of the legislature of the state; that the web of our argument might weave, ere long, our own judicial shroud. Those things are not worth considering; if there is no way to save the official life of this court but by setting at nought the constitution which we are sworn to support and maintain, then perish our official life; the constitution must be maintained.

It is claimed by counsel for the petitioner here, that the decision of this court in the case *in re Meredith* is binding on this court, as finally settling the rule on the subject; and, even if this court shall regard the case as plainly wrong, it must, nevertheless, sustain the decision thus made, upon the principle of *stare decisis*, because it has been accepted as the law, and acquiesced in to this time. It does not appear to come within the rule. In the first place, the case *in re Broadus* had preceded it in this court, and was a *decision the other way*. Under which last named decision, the judges throughout the state had acted, had vacated the bench, and gone without question to the bar, and commenced again the practice of their profession. Was the case *in re Broadus* within the rule of *stare decisis?* if not, why not? In the second place, the case of *ex parte Meredith* was not argued, except on *one side ;* it may have been considered on the other side that the rule had been settled by the Broadus case. The Hon. Charles G. Howison was one of the judges,

which this court had unanimously declared in that case entitled
to his office from the first day of January, 1880, for six years,
and if that ·decision was adhered to, it was truly settled that
said Charles G. Howison was the judge of Prince William
county, when the Meredith case was decided; but the court de-
cided otherwise, and decided that the old judge held over, al-
though in the Broadus case the *entire court* had declared he did
*not* hold over. ·If the rule of *stare decisis* did not apply to the
Broadus case, when the court hearing the case was unanimous,
and when it was heard after argument on *both sides* by the
ablest counsel, how can this rule apply to the Meredith case,
which was decided by a *divided* court, and not argued at all on
the losing side? The able president, perhaps the ablest mind
on the court, dissenting, and perhaps it may not be considered
that the court was so very unevenly divided when we consider
the circumstances surrounding the question, the embarrassments
of some of the members of the court, and the consistency attach-
ing to the dissenting judge, and the inconsistency of some of the
majority.

The rule upon this maxim of *stare decisis* has been often
stated and considered. "The doctrine grows out of the necessity
for a uniform and settled rule of property, and definite basis for
contracts and business transactions. If a decision is wrong, it
is only when it has been so long the rule of action as that time
and its continued application, as the rule of right between par-
ties, demand the sanction of its error; because when a decision
has been recognized as the law of property, and conflicting de-
mands have been adjusted, and contracts have been made ·with
reference to and on the faith of it, greater injustice would be
done to individuals, and more injury result to society by a rever-
sal of such decision, though erroneous, than to follow and observe
it. *But* when a decision is not of this character, upon no sound
principle do we feel at liberty to perpetuate an error into which
either our predecessors or ourselves may have inadvertently
fallen, merely upon the ground of such erroneous decision having

been previously rendered. The question to be considered in these cases have no application whatever to the title or transfer of property, or to matters of contract. They involve the construction and interpretation of the organic law, and present for consideration the structure of the government, the limitations upon legislative and executive power. Certainly it cannot be seriously insisted that questions of this character can be disposed of by the doctrine of *stare decisis.* In such case the former decision or previous construction is received and weighed merely as an authority, tending to convince the judgment of the correctness of the particular conclusion, and not as a rule to be followed without inquiry into correctness." This is the language of a learned judge in one of the states of this Union. (See *Willis* v. *Owen,* 43 Texas.)

In another case it is said: "We are by no means unmindful of the salutary rule of *stare decisis,* but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history of the liability to error and the advantages of review." (See *Pratt* v. *Brown,* 3 Wisc.) The noted case of *Davis* v. *Turner,* 4th Gratt. 422, wherein we find the oft quoted and truly eloquent opinions of a great judge, to which Judge Staples himself pays respect and homage in the case of *Hilb, &c.* v. *Peyton;* and, following the example of Judge Cabell, reviewed and reversed his own previously expressed views, furnishes a shining precedent for reviews of a wrong decision, even if we had ourselves rendered it. We are satisfied that the decision *in re Meredith* is erroneous; we are satisfied that by the constitution *all vacancies* in *all offices* are to be filled in the manner to be prescribed by law; and hence it is our opinion that the legislature having provided that all elections to fill vacancies in the office of judge shall be for the unexpired term, that Judge Burks was elected to fill the unexpired term of twelve years, beginning January 1st, 1871; that his term expired on the 31st day of December, 1882, and that he is no longer a judge of this court, but that Hon. Drury A. Hinton.

having been elected for the term of twelve years, beginning on the first day of January, 1883, and having been commissioned and duly qualified by taking the oath prescribed by law, is a judge of this court, and is entitled to occupy his seat upon this bench.

RICHARDSON, J., concurring in the opinion of the court, said:

The grave importance of the question involved here alone induces me to put on record my views of this case, and not the belief that I could add clearness or strength to the able opinion just delivered by my brother Lacy.

Upon the decision of this court rest not only the conflicting claims of the contestants to a seat on this bench, but the proper interpretation of important provisions of our state constitution, and certain legislation thereunder—legislation claimed on the one hand to be unconstitutional, null and void, and on the other to be the legitimate exercise of legislative authority, and imposed, as such, by the constitution. The delicate and very responsible duty of giving authoritative interpretation to these constitutional and statutory provisions is devolved upon this court under circumstances of peculiar interest.

The first section of article six of the constitution of Virginia provides for a supreme court of appeals for the state. The second section of said article provides that such court shall consist of five judges. By the fifth section of same article, the one relied on by the petitioner, it is declared that "the judges shall be chosen by the joint vote of the two houses of the general assembly, and *shall hold their office for a term of twelve years.* I italicise the words relied on that the question at issue may be brought sharply to view. The language is peculiar and aptly adapted to the plan of classification of officers so prominent in our constitution, and by which it was the evident intention of the framers of that instrument that each class, except to the extent that they might be broken by the occurrence of vacancies,

should go in together and out together. It will be observed
that the language is especially appropriate to a class. It is:
"The judges shall hold *their office,*" &c., and not that *each
judge* shall hold *his office* for twelve years.

If the language referred to was the only language or pro-
vision in the constitution bearing directly on this question the
difficulty of construction would be increased; but even then the
petitioner's claim would by no means be clear, because the gen-
eral plan and scope of the constitution, necessarily to be pre-
served, would strongly tend to direct the judicial mind to an
adverse conclusion.

But the provision in question is not all that must be looked
to. The framers of our constitution wisely foresaw the imprac-
ticability, the impossibility, in fact, of providing for every casu-
alty, every emergency which would, in the nature of things,
arise in the course of administering the government. Hence,
after mapping out the specific plan, after making specific pro-
visions in those cases in which it was safe to do so, it was seen
to be necessary, and a provision was inserted, conferring upon
the general assembly, and charging that body with the duty of
so legislating, in respect to filling vacancies, and in respect to
determining when vacancies in office should be deemed to exist,
in all cases not otherwise expressly provided for, as to make
effective the general plan of the constitution. This was effect-
ually done by section twenty-two of article five, which reads:
"The manner of conducting and making returns of elections,
of determining contested elections, and of filling vacancies
in office, in cases not specially provided for in this constitution,
*shall be prescribed by law,* and the general assembly may de-
clare the cases in which any office shall be deemed vacant, where
no provision is made for that purpose in this constitution."
This section is a part, and very important part, of the constitu-
tion, bearing directly on the question in hand. It is of clear un-
equivocal import. There is not one word in it, which, taken in
connection in which it is used, and in connection with the sub-

ject matter, as part of the organic law, that can admit of the least doubt as to its meaning. The whole clause is absolutely clear, and must be looked to and obeyed as part of the constitution. It is so clear, so unambiguous, that, by the recognized rule in such cases, there is no room for construction; the only thing to do is to obey.

In December, 1872, the general assembly, then in session, passed a joint resolution, which was approved by the governor, providing "that all elections to fill vacancies in the office of judge shall be for the unexpired term of his predecessor." This legislative enactment is plainly responsive to the duty imposed by the constitution, is plainly but the legitimate exercise of inherent legislative power, in the absence of any positive constitutional inhibition, if even said section twenty-two of article five had not been incorporated into the constitution. The legislative will is supreme, except in so far as it is restrained and subordinated by the federal and state constitutions. These impose limitations upon legislative power, and if the prescribed limits be passed, the judiciary is provided and required to pronounce all excesses unconstitutional and void—a duty, be it said to the honor of legislative bodies, which the judiciary are but rarely called upon to perform—and a duty which should ever be approached with the greatest caution, and never exercised except in cases of unquestioned usurpation.

With these plain provisions of law in full force, and long acquiesced in without question by the authorities and by the people, the petitioner, the Hon. E. C. Burks, was elected to fill a vacancy occasioned by the death of his predecessor, and was elected to hold for the unexpired term. Under the law he could not have been elected for any longer or other period. Such being the law, how is it possible for the ingenuity of man to conceive a plausible pretext even for holding that the petitioner was elected for a full term of twelve years, and not for the unexpired term which ended with the 31st day of December, 1882? This case, foreshadowed in the case of *ex parte Meredith*, 33 Gratt.

119, is new and novel in its presentation. It must be considered not alone in reference to the language, "shall hold their office for twelve years," &c., but with reference to the whole constitution and every part thereof bearing upon the subject. Section twenty-two of article five, as has been already said, is not only an important part of the constitution, it bears directly on the question under consideration; without it many questions of vital importance would be left to vague conjecture, and to that extent the constitution would be but a rope of sand. Being part of that instrument, must it be held nugatory or not at the will of the judge, according to the exigency of each particular case? Or must it be looked to and observed as part of the supreme law, and equally inviolable as every other part? Unquestionably the latter.

The well recognized rule in such cases is, that constitutions are not to be intrepreted according to the words used in particular clauses. But taking the terms employed in their common and ordinary acceptation, the whole and every part must be considered with a view to ascertain the sense in which the words were employed, because they were so understood by the framers and by the people who adopted the constitution. This is unquestionably the correct rule of interpretation. The constitution, unlike our legislative enactments, owes its whole force and authority to its ratification by the people, and they judged it by the meaning, apparent on its face, according to the general use of the words employed.

Under this cardinal rule of construction, how is it possible for this or any court to construe the words relied on by the petitioner otherwise than in connection with the whole instrument, and especially other clauses having an express and necessary bearing upon the subject?

The twenty-second section of article five of the constitution expressly excepts from its operation every case of vacancy otherwise provided for. It is very important to observe this fact. Said twenty-second section, or so much of it as bears on this case,

taken in connection with the words found in the fifth section of article sixth, have precisely the same effect, the same meaning as if they stood together in one and the same clause, so as to read: "Judges shall hold their office for a term of twelve years; but the manner of filling vacancies, which may occur in the office of judge during said term, shall be prescribed by law." If this be not so, it can only be because the said section twenty-two is a nullity, or has been abrogated by judicial construction; and I hold that the judiciary can rightfully exercise no such power.

In our preceding constitution of 1851, and also in the intermediate one, known as the Alexandria constitution, there was a corresponding section, identical with said section twenty-two, except that in each of them, after the word "law," there occured the words, "but special elections to fill vacancies in the office of judge of any court, shall be for a full term." These words were omitted by the framers of our present constitution. Not only were they omitted, but were, on consideration, deliberately stricken out, when, and though reported by the appropriate committee as part of said section twenty-two. The words thus embraced in the two former constitutions, and stricken out of the present one, when in course of formation, were, it must be conceded by all impartial minds, absolutely essential to create the exception in favor of judges; without them there could have been no plausibility, no possible pretext for saying that judges did not fall within the general rule prescribed for the election to fill vacancies of all other offices under those constitutions. That the office of judge was thus made an exception under the two former constitutions, and that the action of the framers of our present constitution in rejecting and casting out the very words which were necessary to create such exception, operated to destroy said exception, are matters so plain that they beggar all argument. To hold otherwise is about the equivalent of saying that a thing is so, because it is not so.

Under our constitution the filling of vacancies in office is an

intensely practical question; it engaged the earnest attention of the framers of that instrument. In framing the executive department, it was further provided, that during the recess of the general assembly, the governor should fill *pro tempore* all vacancies in those offices for which the constitution and laws make no provision; his appointments to such vacancies to be by commissions to expire at the end of thirty days after the commencement of the next session of the general assembly. Here again is the express recognition by the framers of the constitution, of all legislative authority in all cases where no constitutional limitation is imposed. And in this provision empowering the governor to fill vacancies, we see displayed a wise foresight which guards against the consequences of a failure to act on the part of the legislature. Had the general assembly done less than it did in passing said joint resolution, providing that elections of judges to fill vacancies, should be for the unexpired term, it would have failed in performing a clearly imposed duty.

Is the judgeship an office? Can a vacancy occur in the office of judge during the term for which he is elected? Did the framers of the constitution, in words of obvious meaning, require the general assembly to prescribe by law the *manner* of filling vacancies in office? And has the general assembly so prescribed? It is inconceivable that any unbiased mind would undertake to answer either of the foregoing questions otherwise than affirmatively. Yet, practically, the claim asserted by the petitioner makes a negative response to each and all of them. There is not the slightest plausibility in the case stated for the petitioner. And the general assembly having in its own right and by authority of the constitution declared that all elections to fill vacancies in the office of judge shall be for the unexpired term, and the petitioner having been so elected, and the term for which he was elected having expired, he is no longer a judge of this court, but a private citizen, and as such returns "into that body from which he was originally taken."

It has been argued with great earnestness for the petitioner

that the question under consideration comes within the rule *stare decisis*, and in support of this doctrine the late majority decision of this court in *ex parte Meredith*, 33d Gratt. 119, is relied on as conclusive of this case for the petitioner.  I propose to review that case in the light of our constitution, the reasons given, and authorities referred to by the able judge who delivered the opinion.  Such is the contrariety of judicial opinion and determination, so often do courts find it necessary to appeal to common sense and manifest right against the effect of even their own previous decisions, that it may be said that the doctrine of *stare decisis* is an unsteady light, the "Will-o'-the-Wisp" of the law.  That this is so, is amply attested by the long list of overruled cases, both American and English. Hence an eminent law-author has with great propriety said : "The doctrine of *stare decisis* is not always to be relied upon, for the courts find it necessary to overrule cases which have been decided contrary to principle."   Bono., L. D., vol. II., 542. I do not mean to intimate that the courts in proper cases should not be bound by well-settled previously adjudicated questions. On the contrary, where questions involving important property rights, or where contracts have been entered into in reference to the law as long settled, then I conceive it to be the plain duty of the courts to follow previous decisions.   But in the case under consideration no property rights were involved, no matter of contract had to be determined.   It was purely a question of tenure of office—a question between a sovereign state and one of its subjects, the latter claiming that the former had granted him more than the terms of the grant imported.   Such was the case of *ex parte Meredith*.   This court in that case responded affirmatively to the claim of the petitioner.

In view of the interpretation now given by this court to the provisions of the constitution in question, it can hardly be necessary to further elaborate that view, than to say the decision in question is in direct antagonism to both the spirit and letter of the constitution.   The constitution nowhere forbids such

action as was taken by the general assembly in the passage of the joint resolution in question, which was in *ex parte Meredith* declared to be a usurpation and void. On the contrary, the framers of the constitution, out of abundant caution, took pains to impose as a duty that which was done by the legislature in the passage of said resolution.

The reasons given by the learned judge who delivered the opinion in *ex parte Meredith,* are unsound. In commenting upon the absence, in our present constitution, of the words, " but elections to fill vacancies in the office of any judge, shall be for the full term," he says: "In the constitution of 1851, such a provision found an appropriate and necessary place. Inasmuch as all the judges under that instrument were elected by the people, it might be inferred that all of them were to be elected at some regular or general election, and it was, no doubt, apprehended that the legislature might so construe. It was to *guard* against these contingencies, to place the terms of office beyond all interference, that the framers of the constitution out of abundant caution adopted the provision in question. In the present constitution it has been seen that such a provision was wholly unnecessary, *because the judges are now elected by the legislature, and their terms of office fixed in words of plain and unambiguous import.*"

It is true that under the constitution of 1851 the judges were all elected by the people; but it is not true that the provision in question was appropriate and necessary for that reason; it is not true that the provision was inserted lest the legislature might construe the law to admit of the election of judges at some regular or general election. The judge overlooked very important facts which completely refute his argument. He overlooked the fact that the words in question were absolutely necessary to create the exception in favor of judges which was created by their employment in that constitution ; and that they were *appropriate and necessary* for that reason, and not because the judges were then elected by the people. He overlooks the fact that by the six-

teenth section of article sixth of the constitution of 1851, it is
expressly provided, "No election of judge shall be held within
thirty days of the time of holding any election of electors of
president and vice-president of the United States, of members of
congress, or of the general assembly." And if it be said that
the judge used the expression "regular or general election," in
reference to county or other elections than those above enumer-
ated, it need only be replied that as to such the constitution of
1851 did not prohibit the election of judges at or near their
occurrence—so that the reasoning is equally fallacious in the
latter as in the former case. And, moreover, the judge lost
sight of the very potential fact that in the succeeding or Alex-
andria constitution the identical words and provision found in
the constitution of 1851 were retained; yet, under that consti-
tution, like the present one, judges were elected by the legisla-
ture, and not by the people. How does it come, then, that the
provision in question—especially for the reasons stated—was
necessary in the constitution of 1851, and not necessary in the
present constitution? It is perfectly apparent that the whole
argument is utterly fallacious. If, as Judge Staples says, said
provision was inserted in the constitution to guard against the
possibility of legislative misinterpretation, and to fix the judi-
cial term beyond all question, why was the expression "filling
vacancies in office" used as well in the constitution now in force
as in that of 1851? Simply because the framers of the latter
intended to say, and did, in effect, say, in plain and unambiguous
terms, that in all cases not specially provided for in that consti-
tution, it should be the duty of the legislature to prescribe by
law the manner of "filling vacancies in office," except the *office*
of judge, in which case, though elected to fill a vacancy, he
should, or they should, in all cases be elected for a full term.
Excepting the provision respecting the filling vacancies in the
office of judge, the corresponding sections in the two preceding
constitutions are identical with section twenty-two of article
five of the present constitution. In the constitution of 1851, as

well as in the present one, in every case the language designating the term is equally explicit—"shall hold," &c.—as the language in our present constitution respecting the term of office of judges of this court. In all other cases the legislature has acted under the constitutional mandate in question, and no voice of complaint has been heard. As all are officers, why is not all this legislation, as well as the joint resolution in question, .unconstitutional and void? If *ex parte Meredith* is a true interpretation, then to that extent we have had no constitutional government under the present organization.

As to the effect of the omission of certain provisions in framing constitutions and adopting statutes of other states, let us look to the previous decisions of this court. In the case of the .*Baltimore and Ohio Railroad Company* v. *Weightman's administrator*, 29 Gratt. 431, Judge Staples, delivering the opinion, said: "We think it very clear that the framers of these enactments had before them, at the time, the English and New York statutes on the same subject, from which the statutes of the different states of a similar character are generally taken. It will be perceived that our legislature has omitted some of the provisions of these statutes, and materially changed the phrase-.ology of others. Thus the English statute requires the plaintiff to file with his declaration a full particular of the person or persons in whose behalf the action is brought. Our statute contains no such provision, and the *very fact that it is omitted, whilst other provisions of the English statute are adopted, would seem to indicate a deliberate purpose on the part of the legislature to dispense with such statement.*" Why, I ask, did not the omitting and deliberate rejection by the framers of our constitution of the clause creating the exception in favor of judges, as contained in two previous constitutions, evince a like deliberate purpose to dispense with, to destroy the obnoxious exception? ·There can, under the rule, be no good reason why.

Again, in the case of *Robertson* v. *Clopton, Judge, &c.*, reported in the July number, 1881, of the Law Journal, Judge

Staples, again delivering the opinion of this court, said : " There
are no other provisions in the constitution having any bearing on
the subject. *When the framers of that instrument deliberately
omitted* the disqualifying clause affecting the commonwealth's
attorney, without substituting others in their place, we *must sup-
pose* it was intended that this disqualification *should thereafter
cease.*" Why should not the deliberate wiping out of the excep-
tion in question by the framers of our constitution, have the same
effect ? Judge Staples was thoroughly right in his rulings in
both the cases referred to. His opinions, on the point in question,
are sustained fully by numerous authorities in and out of Vir-
ginia : prominent among them may be mentioned, *Matthews* v.
*Garner,* 18th Gratt. 989 ; *Crowell* v. *Lambert,* 9 Minn. 283 ; *Peo-
ple* v. *N. Y. Cen. R. R.,* 24 N. Y. 496 ; *People* v. *Pesby,* 2 Hill,
37 ; *Constant* v. *The People,* 4 Wend. 515, and *Clarke* v. *The
People,* 26 Wend. 597. In the last named case, Chancellor Wal-
worth, delivering the opinion, said: " One mode of construing
this section is to take the constitution as we find it, without
reference to the manner in which its different parts were pro-
posed and adopted, and another is to look at the proceedings of
the convention and endeavor thereby to discover the probable
intention of the framers of the constitution as we now find it.
In either case, we must look into the actual state of things
which existed when the constitution was framed and adopted."
If we apply this test, we find the constitution, as it is, without
any exception in favor of judges ; if we look to the preceding
constitution we see there was such an exception; that it was
reported by the committee as part of section twenty-two of article
five, and was stricken out. The intention is manifest. There
is no room for cavil.

I will next notice some of the authorities from other states
of the Union relied on to sustain the ruling in *ex parte Mere-
dith.* Prominent among them is the case of *Hughes* v. *Buck-
ingham,* 13 Mississippi, 672. The constitutional convention
of that state, among other things, created the office of judge

of the superior court of chancery, but did not create the essential office of clerk for said court—in fact was silent on the subject. Soon after the convention had adjourned the legislature was convened, and that body created the office of clerk for said court, but failed to designate the commencement of the term of that officer. In the meantime the chancellor elected for said court had organized the same, and in doing so, as best he could under the imperfect act of the legislature, appointed his clerk for four years, there being in the constitution of that state a provision prohibiting life-tenure in any office. The appointment, thus made under the common law rule, clearly stated by Chief Justice Marshall in the case of *Marbury* v. *Madison*, 1 Cranch 137, took effect from the date of the appointment, and each successive appointee would take in the same way and hold for the period for which appointed. Soon after the appointment thus made, the legislature again assembled and fixed the term of all officers not otherwise provided in the constitution at four years, but still failed to designate the time at which the term should commence. This left the common law rule in force, so that the clerk already appointed by the chancellor was in for four years from the date of his appointment, and had the chancellor made his appointment for a shorter or longer period it would have been good, as the only constitutional limitation was for a period of years—not fixed. About one year after the appointment of said clerk he resigned, and his successor took under the rule above stated and the statute then in force for four years, dating from the time of his appointment. Thus under the constitution and law of Mississippi there could be no holding by such officers as a class for regular periods or cycles as under the express provisions of our constitution. Still later. After some *four years* from the appointment of the first clerk, the Mississippi chancellor removed the incumbent and appointed another clerk, who claimed that the preceding clerks together had held for a full term of four years, and that his appointment was good. The court held

otherwise, and let the old clerk hold out four years from the date of his appointment: and rightly, under the law of Mississippi so held. The simple statement of the case as above given, ought to suffice to show that it does not sustain the conclusion arrived at by the court in *ex parte Meredith.* There is a manifest wide difference in the two cases. Chief Justice Sharky in delivering the opinion in *Hughes* v. *Buckingham,* clearly states the distinction between the class of cases like the one he was considering, and that to which this case belongs. He says: "The great difference between this and the offices created by the constitution is, that the law does not designate any particular time at which the chancellor shall make his appointment. The sense of the provision is, that the clerk when appointed shall hold four years." In another part of his opinion the able chief justice makes the· distinction yet plainer if possible. In· referring to *Smith* v. *Halfacre,* 6 How. (Miss.) 582, he says: "The great struggle in that case was to show that no period was fixed by the constitution for the commencement ·of the· judge's term of office, and that he was therefore entitled to hold for the full period of four years from the time of his election. *And it was fully conceded by the court that this would have been the result of an omission to designate the commencement of the term.* But we held that on a fair construction the constitution did provide for the beginning and the end of the term."

Upon principle, the case of *Hughes* v. *Buckingham* is authority, not against, but for the respondent here, and it contributes nothing whatever in sustaining *ex parte Meredith.* For our constitution not only fixes the beginning and ending of the regular judicial term, but in mandatory terms makes it the duty of the general assembly to prescribe the manner of filling vacancies in office, including the office of judge. The legislature has performed the duty; and the consequence of their act cannot be avoided, unless it can be made to appear that a judge is not an officer, and his station not an office.

The *People* v. *Burbank,* 12 Cal. 378, also relied on to sustain

the case of *ex parte Meredith*, arose under the constitution of that state, which, it is true, contains a provision fixing the terms of office, which is common to all the states so far as I have observed. But there is no provision in that constitution even remotely resembling our twenty-second section of article five; therefore, there can be no analogy between that case and this.

In *People* v. *Green*, 2 Wend., and *People* v. *Constant*, 11 Wend., I find nothing, when looked at from the standpoint of comparison between the constitutions of New York and Virginia, that gives the least support to the case of *ex parte Meredith.*

The case of *Crowell* v. *Lambert*, 9 Minn. 283, is just the converse of the case under consideration, and is, on principle, authority for the respondent. Yet, this case is relied upon to sustain *ex parte Meredith.* The Minnesota case is this: One body of the convention had adopted a section of the article on the judiciary containing the words, "and such successor shall be elected for the unexpired term." Upon a conference of the joint committee of the two bodies these words were stricken out. Delivering the opinion and speaking of this Judge Emmett said: "We think there is special significance in the fact that these words were thus stricken out or omitted by the committee, since it may be regarded as the joint act of the two conventions, and as a deliberate rejection of a proposition to elect for the unexpired term only when a vacancy should happen in the office of any judge; the very proposition upon which the plaintiff or applicant here predicates his application for a peremptory writ of *mandamus.*" Comment upon this case is unnecessary.

So the case of *Banton* v. *Wilson*, 4 Texas, 400, will, on examination, be found in the same category. There is a somewhat striking resemblance between the constitutions of Tennessee and Virginia; so the case of *Powers* v. *Hush*, 2 Humphrey, 24, would approximate, being a case in point for the petitioner, but for the pregnant fact no exceptional clause had been struck out, as in the framing of our constitution. But if the analogy existed in this particular, the Tennessee case could not weigh a feather's

weight against the plain letter of our own constitution. It is useless to pursue the authorities further; it is sufficient to say the decision in *ex parte Meredith* is contrary to our constitution, is in conflict with previous decisions of this court, is at war with the doctrine of *stare decisis*, and cannot be abided by upon either reason or authority. Lastly and above all, I call attention to the case *in re Broadus*, 32 Grattan, in which the opinion was delivered by the late president of this court, Judge Moncure, and in which all the judges sitting concurred in settling this question just the reverse of the case *ex parte Meredith*. The circumstances of the two cases were, it is true, different, but the principle involved in each was the same. Nor did I understand counsel for the petitioner to contend differently. The argument was that the case was not well considered; that no authorities are cited in its support, and that the great judge delivered that opinion when "the messenger of death had already entered into the chamber of the brain."

It is not for me to discuss these questions. The opinion speaks for itself; it is founded upon the plain letter of the constitution, the highest authority, and that which it was the delight of that great jurist to obey.

Whether this opinion is to be ranked with the body of those which so prominently mark him as a great judge, or is to be treated as the last bright gleam of a singularly accurate legal mind, is not material. If the latter, then the last view he took of the constitution of the state he loved so devotedly and served so well, was a strikingly clear and unanswerable one. It stands nobly forth in defense of the constitution as written. It is not only a proud monument by which he transmitted to posterity his just title to fame, but as a judicial achievement for its simple truth and grandeur, will rank among the greatest of Eldon, Hardwick, or Mansfield. Judge Moncure studied, understood and obeyed the constitution and laws of his state.

In view of the plain letter of the law and for the reasons here stated, I am of opinion that if the rule *stare decisis* has been

disturbed in this state, it has been done by the ruling in *ex parte Meredith,* and that case must 'cease to be operative as authority. And that, as a consequence, the joint resolution in question must be held to be constitutional and right. For these reasons, I repeat, I fully concur in the opinion delivered by my brother Lacy.

FAUNTLEROY, J., also concurred in the opinion of the court.

LEWIS, P., *dissenting.*

I am unable to concur in the judgment of the court in this case, and will state the reasons for my dissent.

The only provision of the constitution relating specifically to the election and official tenure of the judges of this court is as follows:

"The judges shall be chosen by the joint vote of the two houses of the general assembly, and shall hold their office for a term of twelve years." Article six, section five. The framers of the constitution, and the people who adopted it, must be understood to have employed these words in their natural sense, and to have intended what they have said. Nor can I doubt that they were deliberately used, and for a wise and beneficent purpose. If their universally accepted meaning is in any manner qualified by a single clause or line in the constitution, I am free to say, after diligent search, I have been unable to find it. The provision, then, is express, imperative, and unqualified that the judges, when chosen by the legislature, shall hold their office for a term of twelve years. No exception is made whatever; the language is general and sweeping; and in my view of it, sitting here as a judge to construe it, it imposes upon me a duty which cannot be disregarded. "If, in any case," says Chief Justice Marshall, speaking for the supreme court, "the plain meaning of a [constitutional] provision, not contradicted by any other provision in the same instrument, is to be dis-

regarded, because we believe the framers of that instrument. could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application." *Sturges* v. *Crowninshield*, 4 Wheat. 122. Giving, then, to the provision of the constitution in question, the interpretation which the plain meaning of its words seems to me to require, I can arrive at no other conclusion, than that when a judge of this court is chosen by the legislature, to supply a vacancy—except in a case hereafter to be mentioned—the election is for the full constitutional term of twelve years. If in any case for a shorter term, where is the provision of the constitution that says so? If such exists, I repeat, I have been unable to find it. Surely, if an exception was intended to be made in so important a matter, the framers of the constitution would have said so, in terms too plain to be misunderstood. In respect to temporary appointments by the governor to fill vacancies, the constitution is careful to limit the term of service. Why, then, if the construction of the majority of the court is correct, are not limits as carefully prescribed in respect to elections of judges by the legislature to fill vacancies? The answer to my mind is, that none were prescribed, because none were intended to be prescribed, further than provided by section five, article six, already quoted.

If we look beyond the language and to the policy of the framers of the constitution the result is the same. To the credit of those men be it said, in no particular is their design made more manifest than their purpose to secure to the people of Virginia the blessings of an independent judiciary.

It was doubtless the melancholy experience of our English ancestors, especially in the reigns of the Stuarts, that prompted that great man, Chief Justice Marshall, when in the constitutional convention of 1829, of which he was a member, to utter these memorable words: "I have always thought, from my earliest youth till now, that the greatest scourge an angry hea-

ven can inflict upon an ungrateful and a sinning people was an ignorant, a corrupt, or a dependent judiciary." And, it may be added, that experience demonstrates that to establish a dependent judiciary is to establish a corrupt or ignorant judiciary, or both. Against such a "scourge" the framers of the constitution intended to guard the people of this commonwealth, by securing for them, as their predecessors had done, an intelligent, a pure, and an independent judiciary. To that end ample provision is made by the constitution. It prescribes for the judges of this court a fixed and certain term of twelve years. It provides expressly that the compensation of none of the judges shall be diminished during their term of office, and, impliedly, that they shall in no case be deprived of their offices, except as provided by the constitution itself.

But how can the independence of the judiciary be secured otherwise than by securing the independence of its members individually? And if that is supposed to be most safely assured by prescribing a tenure of respectable duration, why does not the same reason apply to the selection of persons to supply vacancies as *to the first* or any other election of judges under the constitution? Upon this subject I cannot doubt as to the intention of its framers, and that intention I think is carried out by the construction for which I contend. The result of that construction would tend to secure the services not only of independent but of fit and qualified judges, while, by the contrary construction, it seems to me the intention is, in a measure, defeated. If but one year, or two years, or any other short period of the term of a predecessor is left unexpired, and the election is for the unexpired term only, where is the lawyer of large practice and of conspicuous qualifications to be found willing to make the sacrifice an acceptance of such an election would involve? I do not hesitate to say that not one could be found within the limits of the commonwealth.

Now, it is well settled that "vacancy," *ex vi termini*, means vacancy in the office, and not in the term. It follows, therefore,

in the absence of a constitutional provision, either express or implied, to the contrary, that a judge chosen to fill a vacancy is chosen for a full term, and not for the unexpired term of his predecessor. Nor is this principle confined to the filling of vacant judicial offices. It has been held to apply as well to the offices of sheriff, clerk, register and others. See *People* v. *Green,* 2 Wend. 266; *People* v. *Constant,* 11 Id. 132, 511; *Brewer* v. *Davis,* 9 Humph. (Tenn.) 208; *Keys* v. *Mason,* 3 Snead, 6; *People* v. *Burbank,* 12 Cal. 378. In harmony with this view has been the practice under the federal government from its foundation. Take the offices of district attorney, marshal and the like. When a vacancy occurs, it is filled by appointment for the full term prescribed by law, without reference to the length of service of the appointee's predecessor. And such seems to be the rule in almost all of the states, except where varied by constitutional authority. In the constitutions of some of the states provisions are found requiring elections to fill vacancies to be for a full term; but such provisions, it would seem, are inserted not so much from necessity as out of abundant caution. See *People* v. *Burbank,* 12 Cal., *supra.*

A case strikingly apposite to the one before us is the case last referred to.

By article six, section five of the constitution of California, it is provided that the district judges shall be elected by the qualified electors of their respective districts, at the general election, and shall hold their office for the term of six years. After the adoption of the constitution, the legislature passed an act providing for filling vacancies in the office of judge "for the unexpired term." The relator in that case was elected to fill a vacancy, and it was insisted by the respondent that he was elected for the unexpired term of his predecessor only. But the supreme court of California, construing the section of the constitution referred to, held that he was elected for the full constitutional term of six years, and that the act of the legislature, so far as it provided for a less term, was unconstitutional and void.

The same question had been previously decided by the same court in the case of *The People* v. *Weller*, 11 Cal. 77. And in that decision Judge Field united—then a member of that court, now recognized as one of the ablest and most accomplished judges of the supreme court of the United States. In the course of the opinion in that case the court said: The policy of the framers of the constitution was to give to each district judge elected a right to hold for six years, and thus to secure the independence of the judiciary; and it is obvious that this reason applies to judges whenever elected.

The case of *Keys* v. *Mason* was decided by the supreme court of Tennessee in 1855, and is reported in 3 Snead's Reports, page 6, &c. The constitution of that state, then in force, provided that justices of the peace should be elected for the term of six years. And by another section of the constitution, it was provided as follows: "The filling of all vacancies that may happen by death, resignation, or removal, not otherwise directed or provided for by this constitution, shall be made in such manner as the legislature shall direct." It will be observed that this provision is almost identical with the language of section twenty-two, article five of our own constitution, relied on by the attorney-general in his oral argument and printed brief in this case, which is in these words: "The manner * * * of filling vacancies in office in cases not specially provided for by this constitution, shall be prescribed by law, and the general assembly may declare the cases in which any office shall be deemed vacant, where no provision is made for that purpose in this constitution." By an act of the legislature of Tennessee, it was enacted that a person elected to fill a vacancy in the office of justice of the peace, should hold for the unexpired term of his predecessor, and no longer. Again, it will be observed that this act is almost identical with the joint resolution of our legislature, approved December 18, 1872, upon which the attorney-general and his learned associates almost entirely rely in this case, and which is in these words: "All elections by the general assembly to fill

vacancies in the office of judge, shall be only for the unexpired term of his predecessor."

The act of the Tennessee legislature was assailed as unconstitutional and void, and it was so pronounced by the supreme court of that state. The singularly clear and able opinion of the court, delivered by Caruthers, J., is so applicable to this case that I cannot forbear to quote from it. He said: The statute "is a clear and legitimate exercise of power, so far as the 'manner' of filling vacancies is prescribed; but where was the authority to shorten the term of service fixed by the constitution? By that, every justice of the peace 'shall be elected for the term of six years,' and by this act, for any period that might remain of the term of his predecessor, whether one, two, three, four, or five years, or even a portion of a year. Here, then, is a palpable conflict between the constitution and the act, as to the duration of the term for which a justice of the peace shall hold his office, after his election by the people. The former being supreme must prevail. The term is there fixed at six years under all circumstances, and without exception; and no power is given to the legislature to abbreviate it, but only to provide for the mode and manner of keeping the office filled. This is the extent of the power delegated; and it does not reach the term of service; that is unalterably fixed at six years by the highest law, and it is not competent for the legislature to shorten, any more than to lengthen it." And he added, "It is for us to declare the law as we find it, without regard to results."

Analogous principles were declared by the supreme court and the court of errors of the state of New York in the cases already referred to in 2d and 11th Wendell's Reports, and which I will not stop to review.

A multitude of authorities to the same effect might be referred to if it were necessary to do so. Many of them are cited in the opinion of this court, in *ex parte Meredith*, 33 Gratt. 119, and may be seen by referring to the report of that case.

These cases containing, as they do, the decisions of the highest courts of other states, construing provisions of the constitutions of those states analogous to the provisions of our own constitution now under consideration, are entitled to our profound respect and attention.    Indeed, having been decided before the adoption of our constitution, and, therefore, presumably familiar to its framers, they have with me the force of controlling authority. I should not feel at liberty to disregard but would feel bound by them, if a doubt existed in my mind after reading the provisions of the constitution under consideration.

"Where a particular clause of the constitution," says Judge Cooley, "has been adopted in one state from the constitution of another, after a judicial construction had been put upon it in such last mentioned state, it is but just to regard the construction as having been adopted, as well as the words; and all the mischiefs of disregarding precedents would follow as legitimately here as in any other case."

.   In support of this proposition he refers to many authorities. See Cooley's Const. Lim. (4th edition), marg. page 52.

In opposition to these views counsel mainly rely, as I have said, upon the joint resolution of the legislature, approved December 18, 1872.    It provides that an election of judge to fill a vacancy shall be for the unexpired term of his predecessor. Now if the legislature had the authority to pass it, undoubtedly it would have the effect for which counsel contend.    But to my mind it is so plainly unconstitutional and void, that I cannot hesitate to so pronounce it.    It is the high prerogative of this court to see that the constitution, which the people have adopted as the fundamental law of the state, is not violated, and that each branch of the government is kept within its appropriate sphere of action.    And while appreciating the delicacy of the duty to declare void an act of the legislature as in conflict with the constitution, it is nevertheless a duty, from the performance of which I shall never shrink when occasion requires it, so long as I occupy a seat upon this bench.

The power of the legislature to pass the joint resolution in question is placed by counsel on two grounds: 1. Because a state legislature has full power over all subjects of legislation, except so far as such power is prohibited by constitutional provision; and 2, because authority to do so is conferred by article five, section twenty-two of the constitution, which empowers the legislature to prescribe the manner of filling vacancies in office not provided for by the constitution.

. The first proposition, I think, has already been sufficiently disposed of by what has been said. I will only add that when the constitution fixes the term of an office and does not, expressly or impliedly, give the legislature the power to alter it, it is equivalent to an express denial of the power. The authorities already referred to abundantly sustain this view. It is difficult to see how any other could prevail.

Upon this subject the supreme court of California, in *People* v. *Burbank* (*supra*), quoting approvingly the language of Mr. Justice Huger, of the constitutional court of South Carolina, said: "If the people declare and ordain in their constitution that an office shall be held by a particular tenure, it would be as much a usurpation in the legislature to alter that tenure as it would be in the governor to commission for a longer period than directed by the legislature." And in another case, the same court said: "The governor, in granting a commission, acts ministerially, and therefore ought to make it conform to the law and the constitution. The commission does not confer the office; it is only evidence of it, and cannot change the tenure by which the constitution declares it shall be held."

The second ground is equally untenable; and, as we have seen, has been so held by the highest courts of other states—notably in the case of *Keys* v. *Mason*, 3 Snead (*supra*).

To say that the power to prescribe the manner of filling vacancies confers the authority to *make* vacancies, or in any way to prescribe the tenure of an office fixed by the constitution is a proposition, to say the least, somewhat startling.

Obviously, the section relied on does not relate to filling vacancies in the office of judge, if for no other reason, because the manner of electing judges is specifically provided for by the constitution.

In the argument, much stress is laid by counsel on the fact, that in the section as reported from the committee to the convention, the words "but special elections to fill vacancies in the office of judge of any court, shall be for a full term" were stricken out. By which, it is insisted, the intention of the framers of the constitution to require such elections to be for the unexpired term only, is clearly manifested. I cannot so regard it. What motives influenced such action, we have no means of ascertaining. We are not informed by the proceedings of the convention, and are, therefore, left to conjecture. To my mind, upon the authority of Judge Cooley, the rational explanation is, that the words were regarded as superfluous, as the language employed in article six, section five produced the same result, and had been so construed by the courts whose decisions have been referred to. (Cooley's Const. Lim., 4th ed., 52.)

As further evidence of the intent of the framers of the constitution to prescribe uniform elections of judges, and "by classes," or "in blocks," as it has been expressed, the attorney-general refers to section seven of the bill of rights, which declares that vacancies in office should "be supplied by frequent, certain, and regular elections." The same provision is contained in the bill of rights, adopted along with the constitution of 1851, under which elections to fill vacancies in the office of judge were for a full term. It also appears in the bill of rights appended to the constitution of 1829, under which the judges were elected for life. It clearly, therefore, cannot have the effect contended for it in this case.

But counsel enquire, how and for what term, under any other construction than that for which they contend, is a vacancy in this court to be filled, which occurs during the session of the legislature and after a regular election at which the members of

this court have been chosen for the term commencing on the first day of January following?

The answer is obvious. It is made the duty of the legislature to elect the judges. In such a case, therefore, having discharged that duty, *quo ad* the term commencing on the 1st January following, nothing of its authority remains but to supply the vacancy until the commencement of that term. And this, not by express provision of the constitution, but by necessary implication, and from the necessity of the case.

I have thus considered the case as if the question it involves were now for the first time presented here for decision. But, in fact, it has been decided by this court in at least six cases which have heretofore come before it. It was first distinctly presented and decided in *ex parte Meredith*, 33 Gratt. 119, in which the opinion of the court was delivered by Judge Staples. . I can add nothing to that opinion. It is able, and, to my mind, convincing. Nor is there anything in conflict with that opinion to be found in *ex parte Broadus*, or in any other case cited by the majority, as the most cursory examination will show.

But we are asked to overturn these decisions, and to give to the constitution a different interpretation than it there received.

I apprehend it is our duty to adhere to them, unless well satisfied they are erroneous. In this connection the language of Judge Cooley is eminently worthy of reproduction. He says: " A cardinal rule in dealing with written instruments is, that they are to receive an unvarying interpretation, and that their practical construction is to be uniform. A constitution is not to be made to mean one thing at one time, and another at some subsequent time, when circumstances may have so changed as to make a different rule in the case desirable. A principal share of the benefit expected from written constitutions would be lost, if the rules they established were so flexible as to bend to circumstances, or be modified by public opinion. It is with special reference to the varying moods of public opinion, and with a view of putting the fundamentals of government beyond their

control, that these instruments are framed  *  *  *  *; and the necessity for bills of rights in our fundamental laws lies mainly in the danger that the legislature will be influenced by temporary excitements and passions among the people to adopt oppressive enactments.   What a court is to do, therefore, is *to declare the law as written,* leaving it to the people themselves to make such changes as new circumstances may require." Cooley's Const. Lim. 54.

For these reasons I am of opinion that the Honorable Edward C. Burks, when elected a judge of this court by the legislature in 1876 to fill the vacancy occasioned by the death of Judge Bouldin, was chosen "for a term of twelve years;" that he is now a judge of this court, and is entitled to be recognized as such.

A majority of my brethren, however, differently construing the constitution, have decided otherwise, and to that decision all must bow.

From the beginning of the controversy, the people of Virginia have been fortunate in the assurance, that which ever way it might be decided, the result would be to secure the services in this court of an accomplished, fearless and upright judge.

### ORDER.

The petition of Edward C. Burks to be allowed to occupy the seat in this court, now occupied by Judge Drury A. Hinton, is denied. The court being of opinion that the term of said Edward C. Burks, as judge of this court, expired on the 31st day of December, 1882, and that the term of office of Judge Drury A. Hinton began on the 1st day of January, 1883, and that he is of right entitled to his seat as a judge upon this bench.